WHITE v GENERAL MOTORS CORPORATION

Docket No. 79194. Argued October 7, 1987 (Calendar No. 4). Decided September 27, 1988.

Frederick White retired on March 31, 1980, from General Motors Corporation and received a nondisability pension. Thereafter, he sought and was awarded workers' compensation benefits on the ground that he had retired early because of a work-related chronic respiratory condition. While the case was pending, 1980 PA 357 amended § 373 of the Workers' Disability Compensation Act, effective January 1, 1982, creating a new standard of disability which an employee who retires and receives a nondisability pension must meet to receive workers' compensation benefits. The Workers' Compensation Appeal Board affirmed the award of benefits, declining to apply the new standard after determining that § 373 affected substantive rights and was intended to be applied prospectively. The Court of Appeals, GILLIS, P.J., and GRIBBS and SULLIVAN, JJ., ordered the board's decision vacated and remanded the case to the WCAB for reconsideration in light of *Wojciechowski v General Motors Corp,* 151 Mich App 399 (1986), which had applied § 373 retroactively on the ground that it was a rule of procedure and applied to cases pending which arose out of injuries that preceded the statute's effective date (Docket No. 92867). The plaintiff appeals, limited to the issue whether § 373 should be given retroactive effect.

In opinions by Chief Justice RILEY, joined by Justices CAVANAGH and BOYLE, and by Justice BRICKLEY and Justice ARCHER, the Supreme Court *held:*

Section 373 of the Workers' Disability Compensation Act applies prospectively to employees injured on or after January 1, 1982.

Chief Justice RILEY, joined by Justices CAVANAGH and BOYLE would hold that § 373 of the Workers' Disability Compensation Act affected substantive rights of employees and, thus, applies prospectively to those employees injured on or after January 1, 1982.

Statutes which affect substantive rights are presumed to operate prospectively unless a contrary intent is clearly manifested or unless they are remedial in nature. While the work-

ers' compensation act, as a whole, is remedial legislation, § 373 affected the substantive rights of employees by changing the standard of disability. In addition, no reference to the retroactivity of § 373 appears in 1980 PA 357, and the act provides a future effective date.

Justice BRICKLEY, concurring, while agreeing that § 373 should apply prospectively, stated that the date of the plaintiff's termination of his employment and receipt of nondisability benefits should determine the applicability of the section. Because these events occurred prior to the enactment and effective date of the section, the amendment should not apply to the plaintiff's claim.

Justice ARCHER, concurring, stated that in light of existing case law determining prospective or retrospective application of statutory amendments, the absence of clear legislative intent with respect to the application of § 373(1), and the statute's predominant substantive effect upon a claimant's entitlement to benefits, § 373(1) of the Workers' Disability Compensation Act should apply prospectively to employees injured on or after January 1, 1982.

Reversed.

Justice GRIFFIN, joined by Justice LEVIN, dissenting, stated that the presumption provided in 1980 PA 357, § 373, that an employee who retires and receives a nondisability pension has not suffered a loss of earning capacity as a result of a compensable injury or disease, should apply with respect to workers' compensation benefits payable after January 1, 1982, without regard to when an employee was injured or disabled.

Statutes are presumed to operate prospectively unless a contrary intent is clearly manifested or the statute is remedial or procedural. A statute is not regarded to operate retrospectively merely because it relates to an antecedent event. Section 373 of the act is both procedural and substantive in its wording and effect. It refers both to a presumption and a standard of disability. Its language makes clear that its disability standard is different than that which would otherwise apply under the act. When viewed as a whole, § 373 reflects a purpose on the part of the Legislature to change the disability standard with respect to an employee who terminates active employment and is receiving benefits under either a private or a governmental pension or retirement program.

A remedial statute may operate retrospectively if it does not take away vested rights. Section 373 does not abolish or take away vested rights. In addition, the Legislature did not indicate a retrospective or prospective intention. Rather, the legislative

history subsequent to enactment tends to confirm an intent
that § 373 should apply to all employees who terminate active
employment and are receiving nondisability pension or retire-
ment benefits regardless of when they were injured. In the
absence of an express contrary intent, a reasonable construc-
tion requires that a statute which contains a specific future
effective date should be applied from and after that date to all
who come within the scope of its terms.

*Meklir, Schreier, Nolish & Friedman, P.C.* (by
*Matthew A. Tyler*), for the plaintiff.

*Plunkett, Cooney, Rutt, Watters, Stanczyk &
Pedersen* (by *Jonathan T. Kopit* and *Paul F. Pater-
noster*), *Evans, Nelson, Pletkovic & Hays, P.C.* (by
*John J. Hays* and *William Nole Evans*), and *Wil-
lard W. Wallace* for the defendant.

Amicus Curiae:

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helve-
ston & Waldman, P.C.* (by *Theodore Sachs*), for
Michigan State AFL-CIO.

RILEY, C.J. In this case, we are asked to decide
whether MCL 418.373(1); MSA 17.237(373)(1)[1] of
the Workers' Disability Compensation Act has
retroactive application. We would hold that § 373
affects substantive rights and, thus, applies pro-
spectively to those employees injured on or after
January 1, 1982, the amendment's effective date.
Accordingly, we would reverse the judgment of the
Court of Appeals and reinstate the decision of the
Workers' Compensation Appeal Board.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff White was employed for thirty-seven

[1] The Legislature enacted 1980 PA 357, including § 373, as an
amendment of the Workers' Disability Compensation Act of 1969. See
MCL 418.101 *et seq.;* MSA 17.237(101) *et seq.*

years by defendant. On March 31, 1980, plaintiff
retired under defendant's "thirty and out" nondis-
ability, early retirement plan. On May 29, 1980,
plaintiff filed a claim with the Workers' Compensa-
tion Bureau, alleging that he was disabled as of
the date of his early retirement by chronic bron-
chitis and pulmonary emphysema, arising out of
prolonged exposure to dust, smoke, paint, and
other irritants. The hearing referee, finding that
plaintiff had a work-incurred disability and had
retired early because of his respiratory condition,
awarded plaintiff weekly benefits effective from his
retirement date, payable until further notice from
the bureau. Defendant appealed to the WCAB, argu-
ing that plaintiff was not disabled.

While the case was pending before the WCAB,
the Michigan Legislature enacted 1980 PA 357,
effective January 1, 1982. MCL 418.373; MSA
17.237(373), which provides:

> (1) *An employee who terminates active employ-
> ment and is receiving nondisability pension* or
> retirement benefits under either a private or gov-
> ernmental pension or retirement program, includ-
> ing old-age benefits under the social security act,
> 42 USC 301 to 1397f, that was paid by or on behalf
> of an employer from whom weekly benefits under
> this act are sought *shall be presumed not to have
> a loss of earnings or earning capacity as the result
> of a compensable injury or disease* under either
> this chapter or chapter 4. This presumption may
> be rebutted only by a preponderance of the evi-
> dence that the employee is unable, because of a
> work related disability, to perform work suitable
> to the employee's qualifications, including training
> or experience. *This standard of disability super-
> sedes other applicable standards* used to determine
> disability under either this chapter or chapter 4.
>
> (2) This section shall not be construed as a bar
> to an employee receiving medical benefits under

section 315 upon the establishment of a causal relationship between the employee's work and the need for medical treatment. [Emphasis added.]

On May 2, 1986, the WCAB affirmed the referee's award and declined to apply the presumption set forth in § 373, stating that defendant was not entitled to assert § 373(1) because it concerned substantive rights and that the Legislature intended the amendment to apply prospectively to employees injured after its effective date.

The Court of Appeals remanded the action to the WCAB to be reconsidered in light of *Wojciechowski v General Motors Corp,* 151 Mich App 399; 390 NW2d 727 (1986).

This Court then granted leave to appeal, limited to the issue whether § 373 of 1980 PA 357 should be given retrospective application. 428 Mich 873 (1987).

## II. ANALYSIS

This Court has addressed the issue of retroactive versus prospective application of amendments of the WDCA in several recent cases. First, in *Selk v Detroit Plastic Products,* 419 Mich 1, 9; 345 NW2d 184 (1984), we stated that as a general rule, "statutes are presumed to operate prospectively unless the contrary intent is clearly manifested." A year later, in *Franks v White Pine Copper Div,* 422 Mich 636; 375 NW2d 715 (1985), this Court recognized an exception to the general rule for statutes which are remedial or procedural in nature. Most recently, in *Hurd v Ford Motor Co,* 423 Mich 531, 534; 377 NW2d 300 (1985), this Court considered another provision of the same public act, § 301(2), and concluded that it "was enacted to invalidate this Court's decision in *Deziel v Difco Laboratories,*

*Inc (After Remand),* 403 Mich 1; 268 NW2d 1 (1978), thus effecting a substantial change in the law and that the provisions of this amendment have prospective application."

A

It is against this backdrop that this Court must examine § 373. Defendant characterizes § 373 as procedural.[2] However, careful analysis of this section reveals that it is not procedural. Section 373(1) provides in pertinent part:

> An employee who terminates active employment and is receiving nondisability pension or retirement benefits . . . shall be *presumed* not to have a loss of earnings or earning capacity as the result of a compensable injury or disease under either this chapter or chapter 4. This *presumption* may be rebutted only by a preponderance of the evidence that the employee is unable, because of a work related disability, to perform work suitable to the employee's qualifications, including training or experience. [Emphasis added.]

Relying upon the language highlighted above, defendant argues that § 373 creates a rebuttable

---

[2] The dissent relies upon a quote from an article written by Justice MOODY. Although the dissent properly asserts that the procedural-substantive dichotomy is often difficult to distinguish, the passage addresses retroactivity in a criminal case. In fact, later in the article, Justice MOODY specifically discusses the differences between retroactivity in criminal and civil cases:

> In the civil area, the cases reflect both greater consistency in result and more severe limitations upon retrospective reach. In a sense, this can be explained by the fact that in civil cases, the range of alternatives is narrower than in the criminal arena; concepts such as res judicata and statutes of limitation operate to cut off the backward effect of law-changing decisions. Thus, the full retroactivity occasionally accorded in criminal cases is essentially unknown in civil litigation . . . . [Moody, *Retroactive application of law-changing decisions in Michigan,* 28 Wayne L R 439, 483-484 (1982).]

presumption of law and is, therefore, procedural in nature. However, Michigan law specifically provides:

> The function of a presumption is solely to place the burden of producing evidence on the opposing party.
> "It is a procedural device which allows a person relying on the presumption to avoid a directed verdict, and it permits that person a directed verdict if the opposing party fails to introduce evidence rebutting the presumption." [*McKinstry v Valley Obstetrics-Gynecology Clinic, PC,* 428 Mich 167, 180; 405 NW2d 88 (1987) (quoting *Widmayer v Leonard,* 422 Mich 280, 289; 373 NW2d 538 [1985]).]

Section 373 does not shift the claimant's burden of producing evidence. Therefore, it does not create a "presumption." Rather, we conclude that the "presumption" language in § 373 merely classifies those persons entitled to benefits under § 373.

B

In reiterating the general rule that statutes which affect substantive rights should be applied prospectively, the *Hurd* Court noted that prior to enactment of § 301(2),[3] the eligibility of an employee with a mental disorder for workers' compensation was determined by the "honest perception" standards set forth in *Deziel, supra.* Section 301(2) changed the standard of disability;[4] thus, the Court concluded that the change affected sub-

---

[3] MCL 418.301(2); MSA 17.237(301)(2) was also enacted as part of 1980 PA 357.

[4] Section 301(2) provides:

Mental disabilities and conditions of the aging process, including but not limited to heart and cardiovascular conditions, shall be compensable if contributed to or aggravated or acceler-

stantive rights of the employee. Emphasizing the fact that the Legislature had not indicated whether § 301(2) should be applied retrospectively, the *Hurd* Court held that the amendment must be applied prospectively for injuries occurring on or after January 1, 1982. We find *Hurd* indistinguishable. As the *Hurd* Court stated:

> "In accordance with the rule applicable to original acts, it is presumed that provisions added by the amendment affecting substantive rights are intended to operate prospectively. Provisions added by the amendment that affect substantive rights will not be construed to apply to transactions and events completed prior to its enactment unless the legislature has expressed its intent to that effect or such intent is clearly implied by the language of the amendment or by the circumstances surrounding its enactment." [*Hurd, supra* at 535.]

Similarly, in the present case, prior to enactment of § 373, a claimant need only prove an impairment of wage-earning capacity within his field of employment. *Kaarto v Calumet & Hecla, Inc,* 367 Mich 128; 116 NW2d 225 (1962). Section 373 changed this standard.[5] Specifically, § 373 provides that "[t]his standard of disability supersedes other applicable standards used to determine disability under either this chapter or chapter 4." The effect of § 373 on claimants is similar to the effect on claimants under § 301(2) in *Hurd.* Both

ated by the employment in a significant manner. Mental disabilities shall be compensable when arising out of actual events of employment, not unfounded perceptions thereof. [MCL 418.301(2); MSA 17.237(301)(2).]

[5] Section 373 requires a claimant to prove he or she is eligible for compensation benefits by showing "the employee is unable, because of a work related disability, to perform work suitable to the employee's qualifications, including training or experience."

§§ 301(2) and 373(1) changed a standard of disability. Thus, in accordance with *Hurd,* § 373 should be applied prospectively for injuries occurring on or after January 1, 1982, the effective date of the statute.

Cases relied upon by defendant are distinguishable from *Hurd* and the present case. The statutory amendment in *Selk, supra,* affected the amount of interest an individual was entitled to receive after it was already determined that compensation was due. As we noted in *Franks, supra,* "[i]n *Selk,* we found the interest rate on overdue compensation payments related to a remedy or mode of procedure and was 'but an incident and not the essence of a right or liability.'" *Franks, supra* at 672. Unlike the provision in *Selk,* § 373 involves the question whether a retired employee has a substantive right to compensation under § 373, thus directly affecting the essence of his right, and not merely calculating the amount of compensation which he may eventually receive.

Similarly, in *Karl v Bryant Air Conditioning,* 416 Mich 558; 331 NW2d 456 (1982), this Court held that the newly enacted comparative negligence statute[6] applied retroactively to a pending products liability action. However, actions under the WDCA are, by their very nature, different than products liability actions.[7]

---

[6] See MCL 600.2949 *et seq.;* MSA 27A.2949 *et seq.*

[7] Assuming, however, that *Karl* is applicable in this case, it is more closely related to *Selk* than to the present case. In *Karl,* the jury returned a special verdict in favor of plaintiff for $52,000, finding that the manufacturer had breached its implied warranty. The factfinder also determined that the plaintiff was ninety-five percent negligent. While *Karl* was pending in the trial court, the Legislature enacted the comparative negligence statute which provided for its immediate effect. On appeal, the *Karl* Court held that the statute should be applied retroactively, stating that "[w]hile the total damages which plaintiff could have received were significantly reduced by [the statute], plaintiff's cause of action was not legally barred or taken away."

C

Defendant argues that even if § 373 is substantive, it is remedial and, therefore, should be applied retroactively. While we agree that the WDCA is remedial, in the broad sense, we believe that such a characterization of the act, as a whole, provides no further insight into whether this particular amendment should be applied retroactively or prospectively.

It is well recognized that the WDCA, as a whole, is remedial legislation. *McAvoy v H B Sherman Co,* 401 Mich 419, 457; 258 NW2d 414 (1977); *Van Dorpel v Haven-Busch Co,* 350 Mich 135, 154; 85 NW2d 97 (1957); *DeKind v Gale Mfg Co,* 125 Mich App 598, 609; 337 NW2d 252 (1983). Therefore, characterization of a WDCA provision as remedial should not be dispositive. Otherwise, any statutory amendment of the WDCA could be characterized as remedial and applied retroactively.

The problem with this broad meaning of "remedial" has been explained as follows:

> Generally, remedial statutes are those which provide a remedy, or improve or facilitate remedies already existing for the enforcement of rights and the redress of injuries. They also include

*Karl, supra* at 577. Like the statute in *Selk,* the amendment in *Karl* was "not a matter of substance going to the individual's right to compensation." *Franks, supra* at 672. Thus, the *Karl* holding might be explained by the distinction drawn between the "amount" of benefits and the "entitlement" to benefits. *Karl, supra* at 577. This Court has recognized the distinction drawn between "amount" of benefits and "entitlement" to benefits in workers' compensation cases involving a claimant's earning capacity. See *Leskinen v MESC,* 398 Mich 501, 508-509; 247 NW2d 808 (1976). See also *Medacco v Campbell, Wyant & Cannon Foundry Co,* 48 Mich App 217, 226; 210 NW2d 360 (1973). Similarly, we also recognize that *Karl* might be explained because it has both remedial and procedural aspects. See *Douglas v Robbins & Meyers, Inc,* 505 F Supp 765 (WD Mich, 1980).

statutes intended for the correction of defects,
mistakes and omissions in the civil institutions
and the administration of the state.

Every statute that makes any change in the
existing body of law, excluding only those enact-
ments which merely restate or codify prior law,
can be said to "remedy" some flaw in the prior law
or some social evil. The mere fact that a statute is
characterized as "remedial," therefore, is of little
value in statutory construction unless the term
"remedial" has for this purpose a more discrimi-
nate meaning. [3 Sands, Sutherland Statutory Con-
struction (4th ed), § 60.02, p 60.]

At times, Michigan cases have used the broad
meaning of "remedial" to apply arguably substan-
tive amendments to the WDCA retrospectively. See,
e.g., *Lahti v Fosterling,* 357 Mich 578, 588; 99
NW2d 490 (1959) (retroactively applying 1955 PA
250, repealing a two-year maximum on medical
and hospital expenses); *Spencer v Clark Twp,* 142
Mich App 63; 368 NW2d 897 (1985) (retroactively
applying the provisions of 1980 PA 357, § 1, allow-
ing volunteer ambulance drivers to obtain benefits
as if a county, city or village employee at the
maximum rate). However, in this context, we
prefer the narrower meaning, in which "[t]he term
'remedial' is often employed to describe legislation
which is procedural in nature, i.e., it does not
affect substantive rights." 3 Sands, Sutherland
Statutory Construction (4th ed), § 60.02, p 60. See,
e.g., *Rookledge v Garwood,* 340 Mich 444; 65
NW2d 785 (1954) (applying retroactively the 1952
PA 155 provision allowing an injured worker to
proceed in tort against a defendant tortfeasor) and
*Selk, supra* (applying retroactively the 1981 PA
194 provision increasing the amount of interest on
a workers' compensation award from five to twelve

percent).[8] As we have previously noted, § 373 is substantive in nature. We, therefore, conclude that, in this context, it is not remedial and the statute should be applied prospectively.

**D**

We also find it significant that the Legislature omitted any reference to the retroactivity of § 373. For example, in *Selk,* the Court noted that the Legislature made no reference to the retroactivity of 1981 PA 194 and, in fact, provided a specific future date for its application. In resolving the retroactivity issue, the Court reasoned:

> When one carefully examines how the Legislature utilizes effective dates, however, it is clear that we have accorded that respect which is properly due.
>
> Effective dates are inserted by the Legislature in all kinds of statutes. When it wishes to address the question of retroactivity, the Legislature has specifically done so *in addition to* providing for an effective date.
>
> For example, when the Legislature passed the new rule for a claim and delivery action, in 1976 PA 79, it provided in enactment § 2 that "[t]his amendatory act shall apply to all actions pending or commenced on or after the effective date of this act." Enactment § 3 of the same statute provided: "This amendatory act shall take effect July 1, 1975." Because the Legislature in connection with other statutes in enactment sections has specifi-

[8] Alternatively, Sands indicates that "remedial" may be limited to "legislation which is not penal or criminal in nature." 3 Sands, Sutherland Statutory Construction (4th ed), § 60.02, p 60. In the context of construing an amendment of the WDCA as either retroactive or prospective, we find this meaning to be of no more value than the general meaning outlined by Sands. However, we note that it may have some value in distinguishing statutes which must be strictly construed. See 3 Sands, Sutherland Statutory Construction (4th ed), § 60.01, pp 55-56.

cally addressed retroactivity in addition to provid-
ing an effective date, we are unable to agree that
the mere insertion of an effective date, standing
alone, is dispositive of the prospective/retroactive
effect of 1981 PA 194. [*Selk, supra* at 35, n 2.]

Therefore, we are persuaded that providing a
specific, future effective date and omitting any
reference to retroactivity supports our holding
that § 373 is prospective in application.

### III. CONCLUSION

We would hold that *Hurd* controls in the present
case. Section 373 should apply prospectively only
for injuries occurring on or after January 1, 1982,
the effective date of the statute. Thus, we would
reverse the judgment of the Court of Appeals and
reinstate the decision of the WCAB.

CAVANAGH and BOYLE, JJ., concurred with
RILEY, C.J.

BRICKLEY, J. I concur with the result of the
opinion of the Chief Justice, but write separately
to say that while *Hurd v Ford Motor Co,* 423 Mich
531; 377 NW2d 300 (1985), adopted the date of
injury as the controlling date for the application of
the amendment at issue in that case, I am less
sure that that date would necessarily be control-
ling in this case.

In *Hurd,* the amendment provided a new defini-
tion of personal injury. We based our decision in
*Hurd* on the admonition that "[p]rovisions added
by the amendment that affect substantive rights
will not be construed to apply to transactions and
events completed prior to its enactment . . . ." 1A
Sands, Sutherland Statutory Construction (4th ed),
§ 22.36, pp 300-301. *Hurd, supra,* 535.

Here, the "transactions and events" to which § 373(1) applies are the employee's termination of active employment and the receipt of nondisability pension or retirement benefits. The date on which these events are completed and the date of injury may, but need not, coincide.

Although the amendment in question was enacted and became effective prior to the determination of the WCAB, the plaintiff terminated his employment prior to the amendment and therefore should not be subjected to the new standard.

ARCHER, J. (*concurring*). This Court granted leave to consider whether MCL 418.373(1); MSA 17.237(373)(1)[1] of the Workers' Disability Compensation Act should be applied retroactively. I would hold that the provision applies prospectively to those employees injured on or after January 1, 1982, the amendment's effective date. I would affirm the May 2, 1986, decision of the Workers' Compensation Appeal Board and vacate the peremptory reversal of the Court of Appeals.

### FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Frederick White was employed for

---

[1] An employee who terminates active employment and is receiving nondisability pension or retirement benefits under either a private or governmental pension or retirement program, including old-age benefits under the social security act, 42 USC 301 to 1397f, that was paid by or on behalf of an employer from whom weekly benefits under this act are sought shall be presumed not to have a loss of earnings or earning capacity as the result of a compensable injury or disease under either this chapter or chapter 4. This presumption may be rebutted only by a preponderance of the evidence that the employee is unable, because of a work related disability, to perform work suitable to the employee's qualifications, including training or experience. This standard of disability supersedes other applicable standards used to determine disability under either this chapter or chapter 4.

thirty-seven years by defendant GMC Truck & Bus Group as a painter and sander. Plaintiff retired on March 31, 1980, under defendant's "thirty and out" early retirement plan. On May 29, 1980, plaintiff filed a petition for hearing with the Workers' Compensation Bureau asserting that he was disabled as of his early retirement date by chronic respiratory problems arising from lengthy exposure to paint and other toxic agents. The hearing referee awarded plaintiff weekly benefits effective from his retirement date and payable until further notice by the bureau. The referee further attributed plaintiff's condition to lengthy exposure to toxic fumes in the work place:

> IT IS FURTHER FOUND that the plaintiff who retired at age 59 after 37 years exposure to paint fumes, paint mist and other pollutants, has proved that he has a work incurred disabling chronic obstructive lung disease. He was not a cigaret smoker and had an excellent work record. It is believed that he retired early because of his respiratory condition.

Defendant appealed to the WCAB, arguing that the plaintiff was not disabled.[2] However, in the interim between defendant's July 13, 1981, filing and the WCAB's eventual decision, the Michigan Legislature enacted 1980 PA 357, effective Janu-

---

[2] At the time of plaintiff's injury and defendant's WCAB filing, the standard for benefit eligibility was well settled:

> The test of an injured employee's right to compensation is his inability by reason of the accident to work and earn wages in the employment at which he was engaged when injured. [*Levanen v Seneca Copper Corp*, 227 Mich 592, 601; 199 NW 652 (1924).]

See also *Kaarto v Calumet & Hecla, Inc*, 367 Mich 128; 116 NW2d 225 (1962); *Kidd v General Motors Corp*, 414 Mich 578; 327 NW2d 265 (1982).

ary 1, 1982, MCL 418.373(1); MSA 17.237(373)(1), which instituted a rebuttable presumption of non-disability as to the plaintiff's class of retirees.

On May 2, 1986, the WCAB affirmed plaintiff's benefit award. However, in reliance upon this Court's decision in *Hurd v Ford Motor Co,* 423 Mich 531; 377 NW2d 300 (1985), the board further commented that the defendant was not entitled to assert § 373(1)'s rebuttable presumption as it concerned substantive rights and was intended by the Legislature to apply prospectively to employees injured after its effective date.

Defendant filed a motion for peremptory reversal in the Court of Appeals arguing that § 373(1) governed two claimant classes: (1) the prospective class identified by the WCAB, and (2) a retroactive class of those injured prior to January 1, 1982, yet who were entitled to benefits after that date.[3] On July 10, 1986, the Court of Appeals vacated plaintiff's award and remanded the action to the WCAB to be reconsidered in light of its decision in *Wojciechowski v General Motors Corp,* 151 Mich App 399; 390 NW2d 727 (1986).[4]

---

[3] The terms "retroactive" and "retrospective" are synonymous in judicial usage and may be employed interchangeably. They describe acts which operate on transactions which have occurred or rights and obligations which existed before passage of the act. Although court opinions often designate statutes as either prospective or retrospective, the statutes in fact are often not susceptible to such clear characterization. Many statutes are both prospective and retrospective. Characterization thus may do nothing more than reflect a judgment concerning validity or interpretation, arrived at on other grounds. For example, it has been held that a statute is not rendered retroactive merely because the facts upon which its subsequent action depends are drawn from a time antecedent to its effective date. [2 Sands, Sutherland Statutory Construction (4th ed), § 41.01, pp 337-338.]

[4] In *Wojciechowski,* the Court of Appeals construed § 373(1) to be procedural in nature and therefore *retrospectively* applicable to claimants injured prior to its effective date.

Plaintiff filed for leave to appeal to this Court. We granted leave upon the issue whether § 373(1) should be applied retroactively. 428 Mich 873 (1987).

I

Retrospective application of a statute is disfavored in the absence of explicit legislative intent to the contrary. *McQueen v Great Markwestern Packing Co,* 402 Mich 321; 262 NW2d 820 (1978); *Harrison v Metz,* 17 Mich 377, 378 (1868):

> Courts will construe no law to have a retroactive effect, unless the legislative intent, that it shall so operate, expressly and clearly appears upon the face of the statute itself, and if a construction of any statute which shall limit it to a prospective effect only can be found, that is at the same time consistent with the express letter of such statute, such construction will universally be adopted.

Despite the general prohibition against retroactivity, procedural or remedial provisions which fail to unduly impair vested or accrued rights have been given retrospective application. *Hansen-Snyder Co v General Motors Corp,* 371 Mich 480; 124 NW2d 286 (1963). However, this oft-cited exception favoring retroactive application, frequently belies the difficulty inherent in balancing an uncertain legislative intent against ambiguous statutory provisions:

> In dealing with the problem of retroactivity, it is extremely difficult to establish definite criteria upon which court decisions can be foretold. A statute must not act unreasonably upon the rights of those to whom it applies. What is reasonable and what is unreasonable is difficult to state in advance of actual decisions. ". . . [T]he method to

be pursued is not the unerring pursuit of a fixed legal principle to an inevitable conclusion. Rather it is the method of intelligently balancing and discriminating between reasons for and against." [2 Sands, Sutherland Statutory Construction (4th ed), § 41.05, p 364.]

Section 373(1)'s legislative history is silent upon the Legislature's intent regarding the applicability of this rebuttable presumption. Therefore, I find the provision presents three probable constructions: (1) § 373(1) extends prospectively to claimants injured after its effective date, (2) the presumption extends to all benefits received after its effective date regardless of the retiree's injury date, and (3) the provision governs all benefits received both prior to and after its effective date.

Our task is to thus balance these criteria against our own precedent in order to discern the construction which strikes the intended balance between the policies underlying § 373(1) and the WDCA itself.

### CASE LAW ANALYSIS

The question of the prospective versus retrospective application of several recent amendments of the WDCA has been a recurrent one before the Court. Initially, in *Selk v Detroit Plastic Products (On Resubmission),* 419 Mich 32; 348 NW2d 652 (1984), the Court deemed the Legislature's increase in interest per annum upon unpaid workers' compensation benefits effective January 1, 1982,[5] was a remedial act applicable retroactively, limited to any claimant regardless of their date of injury, who was either awarded or entitled to receive compensation after the provision's effective date.

One year later, in *Franks v White Pine Copper*

---

[5] See MCL 418.801(5); MSA 17.237(801)(5).

*Div,* 422 Mich 636; 375 NW2d 715 (1985), the
Court concluded that §§ 354 and 358, which pro-
vided for the coördination of WDCA payments with
other employer-funded benefits, applied prospec-
tively to claimants injured after the amendments'
effective dates *and* to those receiving benefits after
the effective date regardless of their date of in-
jury.[6] However, most recently in *Hurd v Ford
Motor Co, supra,* this Court determined that 1980
PA 357, which amended the WDCA's causation
standard for mental-disability claims, applied pro-
spectively solely to those injured after the provi-
sion took effect.

From our prior decisions, I discern the following
pattern: (1) Each amendment contained a specific
effective date. (2) In the instances concerning the
amount of benefits to which a claimant was enti-
tled (*Selk, Franks*), the Court disregarded the date
of injury, finding a date of benefits received or
awarded determinative.[7] By contrast, in *Hurd,* the
sole decision to address an amendment redefining
a standard of benefit eligibility, the Court focused
instead upon the date of injury as controlling in
our construction of the provision's effective date.
In *no* instance has the Court disregarded both the
date of injury *and* date of benefits received or
awarded in order to impose total retroactivity
upon a claimant.[8]

---

[6] Section 354 concerned general employee benefits. Section 358
addressed unemployment benefits. In 1985 PA 103, § 354(17), the
Legislature overruled the portion of *Franks* applying § 354 to recipi-
ents injured prior to its effective date. The Legislature did not act
with regard to § 358.

[7] The reference to *Franks* now extends solely to its discussion of
1980 PA 357, § 358.

[8] The absence of a total retrospective application in these decisions
is in accord with the well-settled rule that the presence of a specific
effective date is indicative of the Legislature's intent to limit the act's
retroactivity. See *Selk, supra* at 36 (LEVIN, J., dissenting); 2 Sands,
Sutherland Statutory Construction (4th ed), § 41.02, p 342, n 3.

SUBSTANTIVE v PROCEDURAL ASPECTS

Section 373(1) contains procedural elements which arguably favor retroactive application of the instant statute. The procedural nature of a rebuttable presumption is unquestioned. However, upon examination of the standards of disability applicable prior to the passage of § 373(1), I find that the provision has effected key substantive changes under the wdca:

1. The amendment designates retirees who terminate active employment under early retirement programs similar to defendant's "30 and out" plan, as a class of claimants distinct from others seeking wdca benefits.

2. Section 373 presumes this class of claimants has not incurred a loss of wage-earning capacity due to a work-related injury. Prior to the amendment's passage, retirees, as any other claimant, bore the burden of proving a loss of wage earning capacity.

3. A retiree-claimant may rebut the presumption *only* by a preponderance of evidence that the retiree is incapable due to a work-related injury of performing work within the retiree's qualifications, training, or experience. Previously, the act focused upon the narrower issue of a claimant's earning capacity within the claimant's *field* of employment.

4. Section 373 explicitly supersedes any standard of disability previously used to determine a claimant's eligibility for benefits under chapters 3 and 4 of the wdca.

In my examination of the state of the law prior to § 373(1)'s enactment, it is readily apparent that the Legislature has chosen to impose a more stringent standard of disability upon the plaintiff's class of claimants.[9] Although the definition of disability is couched within a procedural context, in

---

[9] For an excellent discussion of disability under the wdca prior to the passage of § 373(1), see Comment, *Disability under the Michigan worker's compensation act,* 62 U Det L R 433 (1985).

light of its redefinition of a retiree's disability standard, I conclude that § 373(1)'s substantive elements merit paramount consideration.[10] Thus,

> [i]n accordance with the rule applicable to original acts, it is presumed that provisions added by the amendment affecting substantive rights are intended to operate prospectively. Provisions added by the amendment that affect substantive rights will not be construed to apply to transactions and events completed prior to its enactment unless the legislature has expressed its intent to that effect or such intent is clearly implied by the language of the amendment or by the circumstances surrounding its enactment. [1A Sands, Sutherland Statutory Construction (4th ed), § 22.36, pp 300-301.]

Because § 373(1) defines the substantive rule of disability and is therefore determinative of plaintiff's eligibility, I find that the plaintiff's rights in this instance, as with all others present under the WDCA, accrued at the time of injury and that this factor militates in favor of prospective application.[11]

#### REMEDIAL COMPONENT OF § 373(1)

However, even in the instance of a purely or predominantly substantive rule, retroactive application may be employed where the provision is further deemed to be remedial in nature:

> An exception to the general rule is recognized

---

[10] Accord, 2 Sands, Sutherland Statutory Construction (4th ed), § 41.09, p 397.

[11] Cf. *Wright v State Accident Ins Fund,* 43 Or App 279; 602 P2d 1086 (1979), rev'd on other grounds 289 Or 323; 613 P2d 755 (1980), which held an amendment to the presumption of disability applied to fire fighters under the Oregon WDCA applied to those injured *prior* to its effective date because it did not effect a substantive change in the plaintiff's burden of proof.

where a statute is remedial or procedural in nature. . . . *Thus, statutes which operate in furtherance of a remedy or mode of procedure and which neither create new rights nor destroy, enlarge, or diminish existing rights are generally held to operate retrospectively* unless a contrary legislative intention is manifested. [*Franks, supra* at 672. Emphasis added.]

The defendant argues and I agree that the instant provision is "remedial" in that it was designed to counter decades of alleged abuse under the workers' compensation system:

For many years the most hotly discussed topic concerning the Michigan workers' compensation system was the so-called "retiree problem." It was almost unique to this State. Its legal underpinning was the notion developed by the Workers' Compensation Appeal Board, with some support from the judiciary . . . , that a retired worker, even one who had voluntarily retired and gone on a company-funded pension, could still be suffering from a loss of wage earning capacity. If the retiree could demonstrate that he or she had incurred a disability caused by pre-retirement job activity or working environment (a bad back from 30 years on the assembly line or a dust disease from 30 years in a foundry), the retiree was entitled to workers' compensation. It should be emphasized that in many of these cases the disability was undoubtedly genuine, at least in the physical impairment sense, and such an employee would unquestionably be eligible for medical benefits. The fighting issue was whether he was also entitled to recover for wage loss. . . . [F]or a "Big Three" automobile manufacturer (the most common target of this practice), it was plainly provoking, not to mention costly, to see workers take early retirement and walk out of a plant one day and then proceed to file workers' compensation claims the next week. [St. Antoine, Report on *Workers' Compensation in Michigan: Costs, Benefits, and Fairness* (1984), p 60.]

However, in *Franks,* this Court cautioned that this exception is inapplicable where " '[retroactive application would] also significantly and detrimentally affect the substantive right of certain injured employees to *receipt* of workers' compensation benefits.' " *Franks, supra* at 673. (Emphasis added.)

The defendant argues that the instant provision does not impair plaintiff's substantive right to benefits. I disagree. Defendant is correct that a claimant's benefit levels are not vested so as to shield them from review at a future date:

> The right to workmen's compensation disability benefits depends on whether, at a given point in time, the claimant is within the statutory intendment. The scope of that intendment is subject to change. A determination that a claimant is not today entitled to disability benefits does not preclude reexamination of his entitlement should the facts or the law, by legislative amendment or court decision, change tomorrow. Entitlement to continuing disability benefits is an open question. [*Hlady v Wolverine Bolt Co,* 393 Mich 368, 391; 224 NW2d 856 (1975) (LEVIN, J., concurring).]

However, unlike the provisions addressed in *Franks* and *Selk, supra,* § 373(1) embodies the substantive determination whether a retiree is entitled to *any* benefits. Although defendant asserts the provision does not truly concern benefit entitlement, in that it excludes medical benefits, I find the compensation excluded from § 373(1) is secondary to the basic entitlement to compensation benefits which sustain an injured employee's livelihood.

Although defendant argues that § 373(1) should be applied only to benefits received after its effective date, I conclude that defendant's construction would subject plaintiff to a substantive rule of law

not in existence at the time his rights accrued under the WDCA. This Court should be reticent to impose a stricter standard of review which could conceivably eliminate a claimant's entitlement to compensation benefits where they were injured prior to January 1, 1982.[12]

CONCLUSION

Section 373(1) cannot be divorced from the WDCA overall policy to balance economic fairness to employers against the protection of injured workers. Thus, in light of our prior decisions, the absence of clear legislative intent, and the statute's predominant substantive effect upon a claimant's entitlement to benefits, I would hold that § 373(1) is applicable solely to employees injured after its effective date. I would affirm the May 2, 1986, decision of the Workers' Compensation Appeal Board and vacate the peremptory reversal of the Court of Appeals.

GRIFFIN, J. (*dissenting*). This appeal focuses upon § 373,[1] an amendment of the Workers' Disability Compensation Act,[2] which created a rebuttable presumption that employees who retire, receive a nondisability pension or social security benefits, and then apply for workers' compensation are not disabled within the meaning of a standard set forth in the amendment. The issue to be decided is whether the presumption applies in this case which was pending at the time of enactment and

---

[12] The fact that this individual claimant may be able to rebut the § 373(1) presumption (see *ante,* p 401 for the hearing referee's findings), is not dispositive. Our construction must be premised upon the provision's effect at large and in light of the other factors examined in this opinion.

[1] MCL 418.373; MSA 17.237(373).

[2] MCL 418.101 *et seq.;* MSA 17.237(101) *et seq.*

where the plaintiff-retiree claims to have suffered a work-related injury prior to the amendment's effective date. Since § 373 contains no exception from coverage for retirees claiming injury before its effective date, and in view of its remedial purpose directed at a perceived abuse of the workers' compensation system, I would hold that it is applicable in this case with respect to workers' compensation benefits payable after January 1, 1982, when the amendment became effective.

I

As a general rule, "statutes are presumed to operate prospectively unless the contrary intent is clearly manifested." *Selk v Detroit Plastic Products,* 419 Mich 1, 9; 345 NW2d 184 (1984). An exception to the general rule is recognized where a statute is remedial or procedural in nature. *Franks v White Pine Copper Div,* 422 Mich 636, 672; 375 NW2d 715 (1985); *Selk, supra* at 10; *Hansen-Snyder Co v General Motors Corp,* 371 Mich 480, 485; 124 NW2d 286 (1963). Moreover, "a statute is not regarded as operating retrospectively merely because it relates to an antecedent event . . . ." *Franks, supra* at 671; *Selk, supra* at 9.

A

In the case at bar, plaintiff argues that § 373(1) is substantive, rather than procedural. He maintains that § 373(1) establishes a new, more stringent standard of disability for those receiving non-disability pension or social security benefits. Plaintiff contends that prior to enactment of § 373 a retiree-claimant could satisfy the disability requirement then in effect by demonstrating impair-

ment of wage-earning capacity within his particular field of employment. *Kaarto v Calumet & Hecla, Inc,* 367 Mich 128; 116 NW2d 225 (1962). He points out that the standard embodied in § 373(1) requires a showing of inability "to perform work suitable to the employee's qualifications, including training or experience." Plaintiff argues that this "new standard" affects the substantive rights of retiree-claimants and therefore should be applied prospectively.

Plaintiff relies on *Hurd v Ford Motor Co,* 423 Mich 531, 534; 377 NW2d 300 (1985). In that case, the Court examined § 301(2),[3] another provision of the same public act, 1980 PA 357, and found that it "was enacted to invalidate this Court's decision in *Deziel v Difco Laboratories, Inc (After Remand),* 403 Mich 1; 268 NW2d 1 (1978), thus effecting a substantive change in the law and that the provisions of this amendment have prospective application."

Prior to enactment of § 301(2), at issue in *Hurd,* the eligibility of an employee with a mental disorder for workers' compensation was determined by the "honest perception" standard set forth in *Deziel, supra.* In *Hurd,* however, we concluded that by enacting § 301(2), as part of 1980 PA 357, the Legislature changed the standard of mental disability and that such a change was substantive in nature.

Justice Moody was quite right when he wrote:

Whether a ruling is procedural or substantive is sometimes difficult to decide; a legal rule may have both procedural and substantive aspects that are difficult to separate. [Moody, *Retroactive appli-*

[3] MCL 418.301(2); MSA 17.237(301)(2).

*cation of law-changing decisions in Michigan,* 28
Wayne L R 439, 449, n 44 (1982).][4]

I believe that a careful reading of § 373(1) re-
veals that it is both procedural and substantive in
its wording and effect. The provision might be
regarded as purely procedural if it contained only
the following:

> (1) An employee who terminates active employ-
> ment and is receiving nondisability pension or
> retirement benefits under either a private or gov-
> ernmental pension or retirement program, includ-
> ing old-age benefits under the social security act,
> 42 USC 301 to 1397f, that was paid by or on behalf
> of an employer from whom weekly benefits under
> this act are sought shall be *presumed* not to have
> a loss of earnings or earning capacity as the result
> of a compensable injury or disease under either
> this chapter or chapter 4.

However, the provision also includes these
words:

> This presumption may be rebutted only by a
> preponderance of the evidence that the employee
> is unable, because of a work related disability, to
> perform work suitable to the employee's qualifica-
> tions, including training or experience. *This stan-
> dard of disability supersedes other applicable stan-
> dards used to determine disability under either
> this chapter or chapter 4.* [Emphasis supplied.]

Obviously, § 373(1) refers both to a "presump-
tion" and to a "standard of disability." The lan-
guage of § 373 itself makes clear that the standard
set forth is different than that which would other-

---

4 Justice MOODY's commentary focused upon judicial changes in the
law; however, I believe his statement is equally applicable to statu-
tory changes.

wise apply. Such an interpretation is indicated by
the addition of § 373(2) which mandates that eligi-
bility for medical benefits shall not be barred by
the new standard. Furthermore, the Legislature's
intent to establish a new and different disability
standard is emphasized by the inclusion of this
language:

> *This standard* of disability *supersedes* other ap-
> plicable standards used to determine disability
> under either this chapter or chapter 4. [Emphasis
> supplied.]

While recognizing its procedural characteristics,
I believe that § 373, when viewed as a whole,
reflects a purpose on the part of the Legislature to
change the disability standard applicable to an
"employee who terminates active employment and
is receiving . . . benefits under either a private or
governmental pension or retirement
program . . . ." Furthermore, I agree with the
plaintiff that the standard set forth in § 373(1) is
more stringent than the one which otherwise
would have obtained. See *Kaarto, supra; Adair v
Metropolitan Building Co,* 38 Mich App 393; 196
NW2d 335 (1972).[5] Consistent with the holding in
*Hurd, supra,* I conclude that § 373 is substantive
as well as procedural in nature.

B

Defendant argues that even if § 373 is substan-
tive, it should be applied retrospectively because it

---

[5] See, generally, St. Antoine, *Workers' Compensation in Michigan:
Costs, Benefits, and Fairness* (1984); 2 Larson, Workmen's Compensa-
tion Law, § 57.22; Welch, Worker's Compensation in Michigan: Law &
Practice, § 8.01 *et seq.;* Leslie, *The tortured course of the definition of
disability in Michigan workers' compensation law, past, present and
future,* 5 Cooley L R 65 (1988).

is a remedial statute, citing *Rookledge v Garwood,* 340 Mich 444, 453; 65 NW2d 785 (1954).

In *Rookledge* this Court held:

> It is generally understood that if a statute or amendment is "designed to correct an existing law, redress an existing grievance, or introduce regulations conducive to the public good," it will be regarded as remedial in nature. *In re School District No 6, Paris and Wyoming Townships, Kent County,* 284 Mich 132, 144 [278 NW 792 (1938)]. The same connotation is given to those statutes or amendments which apply to procedural matters rather than to . substantive rights. The definitive rule in this respect, found in 50 Am Jur, pp 33, 34, Statutes, § 15, is:
>
> "Legislation which has been regarded as remedial in its nature includes statutes which abridge superfluities of former laws, remedying defects therein, or mischiefs thereof implying an intention to reform or extend existing rights, and having for their purpose the promotion of justice and the advancement of public welfare and of important and beneficial public objects, such as the protection of the health, morals, and safety of society, or of the public generally."

There can be no question but that § 373 was enacted by the Legislature for the purpose of remedying a perceived abuse of the workers' compensation system. Professor Theodore St. Antoine, who served two governors as an adviser on workers' compensation reform, described the problem in a report to Governor Blanchard in these terms:

> For many years the most hotly discussed topic concerning the Michigan workers' compensation system was the so-called "retiree problem." It was almost unique to this State. Its legal underpinning was the notion developed by the Workers' Compensation Appeal Board, with some support from the

judiciary, . . . that a retired worker, even one who had voluntarily retired and gone on a company-funded pension, could still be suffering from a loss of wage earning capacity. If the retiree could demonstrate that he or she had incurred a disability caused by pre-retirement job activity or working environment (a bad back from 30 years on the assembly line or a dust disease from 30 years in a foundry), the retiree was entitled to workers' compensation. It should be emphasized that in many of these cases the disability was undoubtedly genuine, at least in the physical impairment sense, and such an employee would unquestionably be eligible for medical benefits. The fighting issue was whether he was also entitled to recover for wage loss. . . . [F]or a "Big Three" automobile manufacturer (the most common target of this practice), it was plainly provoking, not to mention costly, to see workers take early retirement and walk out of a plant one day and then proceed to file their workers' compensation claims the next week. [St. Antoine, Report on *Workers' Compensation in Michigan: Costs, Benefits, and Fairness* (1984), p 60.]

As early as 1975, Professor St. Antoine, as chairman of the Governor's Workmen's Compensation Advisory Commission, had delivered a report to Governor Milliken which stated in part:

The question of the retirees is one of the most important, and perhaps the single most intractable, of all the issues currently arising under the Michigan workmen's compensation system. In 1973, the "Big Three," General Motors, Ford, and Chrysler paid out over 24 million dollars to retirees. With the additional costs of administering these claims and, where necessary or appropriate, retaining counsel, the total costs to the companies exceeded $30 million. According to the Michigan Department of Commerce Data Base, other self-

insurers and the insurance carriers paid almost as much, over 20 million dollars. Hence the total cost of claims by retirees exceeded 60 million dollars in 1973, the most recent year for which reasonably firm statistics are available. With increased benefit levels since 1973 and an increased volume of claims, reasonable estimates for the total retiree cost in Michigan for 1975 range from 80 to 90 million dollars. [*Report of Governor's Workmen's Compensation Advisory Commission* (1975), p 17.]

Although the 1975 advisory commission was unable to reach agreement upon recommendations for improvement of the system in Michigan, the report further stated:

As a solution, some employer spokesmen offer a two-step approach. Any worker who retired because of old age or under a pension plan would be rebuttably presumed to have removed himself from the labor market and therefore not capable of suffering a loss of earning capacity. The presumption could be overcome by evidence showing that the worker had been unable to obtain substantial employment because of a disability rather than because of age or economic conditions. Then, after rebutting the presumption, any retiree-claimant who was also eligible for pension benefits would have his workmen's compensation reduced to the extent of his employer funded pension benefits.

This solution addresses what many employers consider to be the central problem: Is the retiree prevented from working by a disability which occurred in and arose out of the course of employment or has the retiree withdrawn from the labor market and is merely seeking a little something extra? [*Id.,* p 21.]

In 1977 an attempt to enact legislation dealing

with the "retiree problem" fell short.[6] One commentator, in summarizing this effort, stated:

> Some of the notorious abuses of workers' compensation in Michigan were also attacked by S. 1285 . . . . More importantly for curbing the "retiree problem," S. 1285 would have created a rebuttable presumption that retirees have not suffered a loss of earnings or earning capacity as a result of a compensable injury or disease. [Hunt, *Workers' Compensation in Michigan: Problems and Prospects* (Kalamazoo: W. E. Upjohn Institute for Employment Research, 1979), pp 22-23.]

On April 11, 1979, Governor Milliken delivered a special message to the Legislature on workers' compensation which further underscored the remedial nature of the legislation embodied in § 373. He said:

> A frequent criticism is that Michigan, almost alone among the states, pays a large portion of its workers' compensation benefits to persons who have left the labor market for reasons other than disability.

---

[6] See 1977 Journal of the Senate 2350-2351, and proposed SB 1285, § 371(1) which would have provided:

> An employee who retires or who otherwise terminates active employment and is eligible for or receiving pension or retirement benefits under a private or governmental program or is eligible for or receiving social security retirement benefits, shall be presumed not to have a loss of earnings or earning capacity as the result of a compensable injury or disease. This presumption may be rebutted only by proof by the employee by a preponderance of the evidence that the employee is unable, solely because of disability as defined in this act, to perform substantial work suitable to the employee's qualifications, training, or experience and not merely disabled from earning full wages at the work in which the employee was last subject to the conditions resulting in disability. This subsection shall not be construed as a bar to receiving medical benefits payable under section 315.

I recommend that we eliminate or minimize compensation payments to those persons no longer in the labor market.

Previous reform negotiations have produced general agreement that a presumption should be established that recipients of pensions and social security retirement benefits have not suffered a loss of earning capacity, unless rebutted by a preponderance of evidence. This presumption should be established in the statute. [1979 Journal of the Senate 608.]

Finally, on December 30, 1980, while this case was pending before the hearing referee, § 373 was enacted by the Michigan Legislature as part of 1980 PA 357,[7] the first step in a series of reforms of the Michigan workers' compensation system. In light of the legislative history and other circumstances surrounding its enactment, I would conclude that § 373 is remedial[8] within the meaning of the rule laid down in *Rookledge, supra.* See also *Lahti v Fosterling,* 357 Mich 578; 99 NW2d 490 (1959); *Karl v Bryant Air Conditioning Co,* 416 Mich 558; 331 NW2d 456 (1982).

C

As this Court said in *Karl, supra* at 575, a remedial statute may operate retrospectively if it does not "take away vested rights." See also *Ballog v Knight Newspapers, Inc,* 381 Mich 527; 164 NW2d 19 (1969); *Hansen-Snyder, supra.*

In assessing whether a "vested" right would be taken away, it is important to have in mind that

[7] For additional information on the legislative history of 1980 PA 357, see VanderLaan & Studley, *Workers' compensation reform: A case study of the legislative process in Michigan,* 14 U Mich J L Ref 451 (1981).

[8] In *Hurd, supra,* the Court did not find that the statute there involved was remedial in the sense of *Rookledge.*

the nature of the right to workers' compensation is quite different from the right to recover damages in tort or other civil actions. As the Court said in *Franks, supra* at 654:

> Workers' compensation benefits are social-welfare income-maintenance benefits. Workers' compensation is the first or progenitor safety net providing a means of income maintenance for persons who have met misfortune or whose regular income source has been cut off. All the social welfare programs—workers' compensation, unemployment compensation, social security old age, disability, and survivors benefits, no-fault automobile benefits, aid to families with dependent children, and general assistance—are directed to the same objective, income maintenance. All these programs are funded by impositions on employers and others of mandatory payments (to the government, insurers or, in the case of the self-insured, to the beneficiary), with statutorily prescribed benefits. *In providing for such benefits, the Legislature did not covenant not to amend the legislation.* [Emphasis supplied.]

In a concurring opinion, Justice LEVIN in *Franks, supra* at 683, wrote:

> Workers' compensation benefits are payable weekly, and are geared to weekly wage loss. The nature of workers' compensation is that events after an award of benefits may change the extent of an entitlement to benefits. A disabled worker may cease to be disabled or obtain gainful employment. The number of the worker's dependents may change. The right to receive workers' compensation benefits thus generally depends on one's status, week by week, and is subject to change during any week.
>
> A workers' compensation award, thus, differs from a judgment in a tort action where, when the plaintiff prevails, a lump-sum award is fixed and

payable without regard to whether predictions concerning the severity or longevity of the claimed damages are borne out by subsequent experience.

Taking into consideration the nature of the right to workers' compensation, I conclude that § 373 does not abolish or take away vested rights. See also *Rookledge, supra; Harsha v Detroit,* 261 Mich 586; 246 NW 849 (1933); *Bejger v Zawadzki,* 252 Mich 14; 232 NW 746 (1930).

D

Even though a statute is remedial and does not abolish or take away vested rights, it will not be applied retrospectively if a contrary legislative intent has been manifested. *Karl, supra* at 571; *Selk, supra* at 10, citing *Rookledge, supra.*

In other words, the question whether a statute is to apply prospectively or retrospectively is always governed, in the final analysis, by legislative intent if it can be determined. As the Court has said, "the *Rookledge* principle is also simply one of statutory construction." *Selk, supra* at 10.

As the Court of Appeals said in *Wojciechowski v General Motors Corp,* 151 Mich App 399, 408-409; 390 NW2d 727 (1986), the Legislature did not indicate "its retrospective or prospective intention [with respect to § 373] in clear and express language." Furthermore, a careful examination of the statute and the circumstances surrounding its enactment reveal no manifest intent that its provisions should not apply to one whose injury preceded the effective date. On the contrary, legislative history subsequent to its enactment tends to confirm an intent that § 373 should apply to all "employee[s] who terminate active employment and [are] receiving nondisability pension or retire-

ment benefits" regardless of when they were injured.

Notice should be taken of the fact that on May 14, 1987, the Legislature enacted and gave immediate effect to 1987 PA 28, which amended various provisions of the Workers' Disability Compensation Act. Included was an amendment of § 354(17) (providing for coördination of social security and certain employer-financed benefits). The amendment provides:

> The decision of the Michigan Supreme Court in *Franks v White Pine Copper Division,* 422 Mich 636 (1985) is declared to have been erroneously rendered insofar as it interprets this section [§ 354], it having been and being the legislative intention not to coördinate payments under this section resulting from liability pursuant to section 351, 361, or 835 for personal injuries occurring before March 31, 1982. It is the purpose of this amendatory act to so affirm. This remedial and curative amendment shall be liberally construed to effectuate this purpose.

Without venturing comment concerning the constitutionality of such a pronouncement, an issue not before us, I believe the amendment sheds some light on the intent of the Legislature, at least as of May 14, 1987.

It is significant that the Legislature, through its limited and carefully worded amendment, sought to "overrule" only that part of our decision in *Franks* which interpreted § 354. Of course, in *Franks* we also considered whether § 358 (providing for the offset of unemployment compensation benefits) should apply to a workers' compensation claimant whose injury preceded the provision's effective date. We held that "the setoff provision of § 358 may be applied to reduce workers' compensa-

tion liability to workers injured prior to its effective date." *Franks, supra* at 668-669.

It is also noteworthy that on May 14, 1987, when the Legislature enacted 1987 PA 28, which amended § 354 and several other sections of the act, it chose not to amend § 373, despite the fact that more than a year earlier, on May 5, 1986, the Court of Appeals in *Wojciechowski, supra* at 408, had ruled that § 373 "which creates a presumption of no loss of wage earning . . . should be retroactively applied" in a case where the injury occurred prior to the provision's effective date.

Of course, courts should not read too much into silence on the part of the Legislature. On one occasion Justice VOELKER caustically questioned that members of the Legislature are "clamoring and elbowing each other in their zeal to get at the pearls of wisdom embalmed in the latest decisions and advance sheets . . . ." *Van Dorpel v Haven-Busch Co,* 350 Mich 135, 146; 85 NW2d 97 (1957).[9]

However, where, as in the case of workers' compensation reform legislation, the final product of intense bargaining represents a compromise to accommodate strong, divergent interests, it would be unrealistic to believe that the contending forces in and beyond the Legislature were not fully aware of what was left out of the package, as well as what was included. Particularly in such situations, silence and inaction on the part of the Legislature, can be very meaningful.[10]

[9] Criticizing courts which rely too heavily on legislative silence, Justice VOELKER referred to the practice as the "Rip-Van-Winkle doctrine of judicial stagnation and inertia," *Van Dorpel, supra* at 148.

[10] As a part of 1982 PA 32, approved with immediate effect on March 10, 1982, the Legislature repealed the enacting clause of 1980 PA 357, and simultaneously reenacted § 373 along with certain other provisions, providing again that § 373 "shall take effect January 1, 1982." As we noted in *Franks, supra* at 668, that action taken subsequent to January 1, 1982, had the effect at the time of directing retrospective operation of § 373.

Guidance may also be drawn from the fact that, while it enacted 1980 PA 357 on December 30, 1980, the Legislature specifically directed that § 373 should not take effect until a year later, on January 1, 1982. Comments made by Justice LEVIN in *Franks,* although related to other provisions of the 1980 and 1981 reform acts, are equally applicable to § 373:

> The legislative purpose in providing a specific future effective date was to indicate when the provisions of the amendatory acts . . . would take effect.
>
> *     *     *
>
> [T]here is no basis in the language of the . . . reform legislation or in its history that would justify the conclusion that the Legislature, which expressly stated that these amendments were all to become effective on January 1, 1982, did not intend that they would be effective as to all weekly payments of workers' compensation becoming due on or after that effective date even though the worker was injured before that date. [*Id.* at 681, 683-684 (LEVIN, J., concurring).]

Moreover, when the effectiveness of a statute has been postponed to a specific future date (for one year in the case of § 373) it seems reasonable to believe, in the absence of some contrary indication, that a purpose of the Legislature was to provide advance notice to those who would be affected by its provisions. Obviously, if, as plaintiff contends, the Legislature had intended that § 373 should apply only to those who would be injured in work-related accidents occurring after the effective date, the purpose of notice could not be served.

In the absence of contrary intent expressed by the Legislature (e.g., such as that provided with respect to § 354), I believe a reasonable construc-

tion requires that a statute which contains a specific future effective date should be applied from and after that date to all who are expressly covered by its terms. The Legislature has often demonstrated that when it wishes to "grandfather" or except from coverage a particular group, it can find the language to do so.

Accordingly, I would hold that the provisions of § 373 of 1980 PA 357 are applicable with respect to workers' compensation benefits payable after January 1, 1982, in determining the amount, if any, of weekly benefits due and payable to any employee described in § 373(1) without regard to when the employee may have been injured or disabled.

LEVIN, J., concurred with GRIFFIN, J.