LEVANEN *v.* SENECA COPPER CORPORATION.

MASTER AND SERVANT — WORKMEN'S COMPENSATION ACT — RES
JUDICATA—REHEARING.

The addition of the words "without prejudice" to a de-
cision by a deputy commissioner dismissing an injured
employee's petition to reopen his case and grant him ad-
ditional compensation, from which no appeal was taken,
was without legal significance, since the deputy has no
greater authority than the department of labor and in-
dustry, which has no power, under the workmen's com-
pensation act, to grant a rehearing after a final adjudica-
tion, and therefore the department exceeded its authority
in entertaining a subsequent petition on the same grounds
and awarding compensation on appeal from the decision
of the deputy denying same.

Certiorari to Department of Labor and Industry.
Submitted October 23, 1923.     (Docket No. 69.)     De-
cided July 24, 1924.

John Levanen presented his claim for compensation
against the Seneca Copper Corporation for an acci-
dental injury in defendant's employ.     From an order
awarding compensation, defendant brings certiorari.
Reversed, and order vacated.

*H. C. Schulte,* for appellant.

*E. F. Le Gendre,* for appellee.

STEERE, J.    John Levanen was working for defend-
ant as a shaft miner in the Seneca copper mine near
the town of Mohawk in the Upper Peninsula of
Michigan, and on December 7, 1920, sustained an ac-
cidental injury while barring loose ground from the
side of the shaft, a portion of which slipped and struck

On inability to get work because of injury, as "incapacity for
work" within the meaning of workmen's compensation act, see
note in L. R. A. 1916A, 380.

him on the left leg breaking the fibula, or smaller of the two lower leg bones. Defendant recognized the case as one of "compensable accident," made a proper report to the then industrial accident board and provided him suitable medical and hospital attention. The broken bone was properly set and in a reasonable time made a good recovery, as the attending physician testified and an X-Ray examination of his leg showed beyond dispute. As authorized by the act in such cases, an agreement was reached and filed with the industrial accident board, on December 23, 1920, providing compensation to plaintiff at the rate of $14 per week during total disability and a proper rate per week during partial disability, if he became legally entitled to the same thereafter. On August 1, 1921, a final settlement receipt was filed with the board, signed by Levanen and subscribed by two witnesses, acknowledging receipt in full on final settlement of compensation for his injuries, amounting to $270.12.

On October 17, 1921, he filed a petition with the accident board to reopen the case, claiming that as a result of his accident he was totally disabled from following his former employment or any work of a similar nature. Answer was filed by defendant in denial and hearing thereafter had, on December 10, 1921, before Deputy Commissioner Derham who, "having made careful inquiry and investigation of said matter and being fully advised," dismissed plaintiff's petition without prejudice. No appeal from this adjudication was taken. On February 8, 1922, plaintiff filed a second petition to reopen the case, alleging that after returning to defendant's employ for a short time he found himself totally incapacitated from doing any work at his former employment as a miner by reason of his injuries sustained in the accident in question. Defendant answered denying he was incapacitated from work by reason of the accident, and

227—Mich.—38.

alleged that his present indisposition, if any, was imputable to rheumatism or other ailments not resulting from accidental injury while in defendant's employ. Full hearing was had before Deputy Commissioner Beattie who, on April 13, 1922, made an adjudication denying and dismissing plaintiff's petition.    Plaintiff took no appeal from this second decision, but on May 24, 1922, filed a third petition asking that the case be reopened, stating he had been given employment since his injury by defendant and others and attempted to work but found himself totally incapacitated from doing work of any kind requiring use of his leg, injured in said accident.    Defendant filed an answer in denial as before, alleging no right to a further hearing because no appeal had been taken to previous awards, and on hearing of the second petition all facts and issues presented by the third petition had been heard and passed upon, the entire matter being *res adjudicata.*

This third petition was heard on August 28, 1922, before Deputy Commissioner Brown, who, after hearing the proofs and allegations of the parties, adjudged claimant was not entitled to receive further compensation, and denied his petition.    At that hearing the commissioner allowed plaintiff, against defendant's objection, to introduce testimony covering both his former and present physical condition and to retry the whole case from the beginning.

Within the time fixed by law plaintiff filed a claim for review of this third arbitral award and the case was thereafter heard, on October 25, 1922, by the full commission of the department of labor and industry.    At this hearing on review it was suggested to plaintiff's attorney by the commission that he make application for permission to submit further testimony, which he did.    Permission was then granted by the commission against defendant's objection.    On December 2, 1922, the commission wrote plaintiff's at-

torney that the case had been carefully considered, and the medical testimony was found so conflicting that the department desired an examination of plaintiff by an impartial physician; that there seemed little doubt as to his physical condition, but whether it could be connected with the accident the medical testimony did not show and if an impartial physician could be agreed upon by the parties and his examination reported to the commission, to be used as testimony, it might aid in the solution of this rather perplexing case, and an order was made holding the case in abeyance to give the parties opportunity to have an examination made as suggested. Pursuant to this suggestion counsel for the respective parties agreed to an examination of plaintiff by two physicians, Drs. Abrams and LaBine, each party suggesting one to whom the other made no objection. On making such examination the two physicians were at variance as to plaintiff's then physical condition and particularly the condition and cause of a lump or raised area near the place of fracture on his left leg, which they agreed an exploratory operation would determine.

Touching that subject, the record shows that applicants for work in defendant's mine were given a physical examination before being employed, and plaintiff testified that he received such an examination. The record of his employment examination made by Dr. Conrad, on April 24, 1918, showed that he had at that time varicose veins in his lower limbs. Dr. Conrad also attended him professionally at the time of the accident. He testified that when he set the small bone of his left leg and cared for him during his recovery plaintiff was still afflicted with varicose veins in his legs and he then treated him for a varicose ulcer on the right leg; that after his recovery there appeared a small swelling on the shin bone of his left leg near the fracture which in his opinion was manifestation of a varicose vein. The medical ex-

perts disagreed as to whether this enlargement was a varicose vein, or a rupture of the sheath of the anterior of the tibial muscle which might permanently lame the afflicted party and cause severe pain whenever the muscle was put on tension.

Following some correspondence between the parties and the commission, the latter suggested in a letter dated February 5, 1923, that defendant arrange for an exploratory operation on claimant's leg with a view to determining definitely the issue between the experts. Plaintiff was therefore sent to the University hospital at Ann Arbor and there examined by Dr. Hugh Cabot, dean of the medical faculty and professor of surgery, who on examination determined an operation unnecessary for such purpose and submitted his diagnosis to the commission in two letters, one of April 17, 1923, and one of April 25, 1923. In the first he stated that a careful examination by X-Ray showed plaintiff had sustained a fracture of the fibula and "excellent union has taken place in thoroughly satisfactory position;" that the pain of which plaintiff complained was located by him in the left shin bone on the outer side where there was a somewhat raised soft area showing a slight depression in the muscular underlying structures. That plaintiff was afflicted with extensive varicose veins of both legs of undoubtedly long standing and probably congenital origin "having no relation to the injury." That while the varicose veins probably caused the discomfort of which he complained, "they clearly have no relation to the accident or injury nor to the treatment thereof and must be regarded as an entirely separate matter."

The second letter, of April 25th, submitted a supplementary report, stating that in his previous letter he had omitted to mention a suggestion made at the time of the examination that a rupture of the sheath muscle might cause the appearance of the raised area on the left leg, of which he said in part:

"It is perfectly easy to say whether or not a soft area over a muscle is due to an old rupture of the sheath or not, as should the gap in some sheath remain the voluntary contract of the muscle will bulge through it in a perfectly characteristic fashion.

"This does not occur in the case of John Levanen, * * * Moreover, it is quite clear that the situation which now exists is in fact due to varicose veins, and there is a somewhat similar though not entirely similar condition on the other leg. The situation here found is one extremely common in people having varicose veins as extensive as in this case.

"I am, therefore, of the opinion that an operation having for its purpose a decision of this question would be entirely unjustifiable as it would put the individual to the discomfort and pain incident to an operation with no possible benefit.

"If the varicose veins, which are in my opinion responsible for this condition, are to be treated, this is not the proper method, so I would not feel justified in doing the operation which was suggested in this case."

In acknowledging these letters the department stated that the operation agreed upon had not been performed but only a diagnosis made. Some correspondence followed between the commission and counsel for defendant in which the latter offered to pay for the suggested operation if the commission yet desired one, "regardless of the facts which such operation might prove with reference to the cause of his present disability." On May 1, 1923, defendant's counsel again wrote the commission that if it was still desired an operation be performed defendant would be glad to follow the commission's suggestions. The commission made no reply to these offers but on June 1, 1923, rendered an opinion reversing the decision of its Deputy Commissioner Brown, and awarded plaintiff compensation at the rate of $14 per week from January 12, 1923, "the date testimony was last taken in the case," amounting to $273, and further compensation at "the rate of $14 per week until the facts and

circumstances warranted a change in the weekly rate."

The commission assumed appellate jurisdiction and entered upon a review of the case after three arbitration hearings before three different deputy commissioners, in each of which it was held on the testimony as presented at those respective arbitrations that plaintiff, upon whom the burden of proof rested, had failed to establish his case against defendant and the proceedings had been dismissed. The appeal being from the third, the testimony taken in that arbitration was what the commission assumed to review. The hearing on review was had October 25, 1922, and upon that testimony the commission apparently found itself unable to disagree with the result reached in the arbitration. On its advice plaintiff's counsel asked and obtained an order from it to take further testimony. The order dated December 13, 1922, gave "the parties an opportunity to take and submit any and all additional testimony therein and (pursuant to its letter to plaintiff's counsel of December 2, 1922) to have an examination of applicant made by an impartial physician to ascertain the cause of said applicant's present disability." Defendant's counsel filed objections to this order, but subsequently counsel for the respective parties agreed on two physicians whose testimony was taken before a notary, after they had together made an examination, which was transmitted to the commission. After receiving the conflicting testimony of these physicians the commission was apparently yet unable to find that a wrong result had been reached in the arbitration it was reviewing. It then wrote defendant's counsel, on February 5, 1923, suggesting that his client arrange for an exploratory operation on plaintiff's leg to determine the cause of his disability. While the commission apparently had arrived at the conclusion that plaintiff was under some disability, it is also apparent that

it did not then find, after both parties had opportunity to take all the testimony they desired, it was satisfactorily shown by plaintiff that such disability was caused by the accident.

Defendant attempted to comply with the suggestion of the commission and, apparently agreeable to all parties concerned, took plaintiff to Ann Arbor for an exploratory operation by Dr. Cabot, with the result stated, and later twice offered to try again if the commission desired, to which the commission did not reply but thereafter, with the testimony before it unchanged, reversed the arbitration decision of dismissal and gave plaintiff an award for total disability arising out of and in the course of his employment.

Whether the reference to an exploratory operation in the commission's findings is intended as explanatory of the award being made after admitting in effect that the testimony submitted by plaintiff was not sufficient is not made clear, although no other purpose is suggested. It is as follows:

"It seems to be agreed that an operation would disclose whether the applicant's condition is due to varicose veins or to a torn muscle. The applicant has signified his willingness to undergo such an operation. The respondent has been given every opportunity to operate upon the applicant so as to determine the true cause of his disability, but it has failed to do so."

Defendant is not the applicant. It was incumbent on plaintiff to prove his case, *prima facie* at least, and until he did so defendant was not required to go to the trouble or expense of procuring proof to the contrary.

The first adversary proceeding in this case was plaintiff's petition for further compensation following the filing of a final settlement between the parties which had been approved by the commission. The commission then ordered the first arbitration hearing, which was held before Deputy Commissioner Derham

who heard "the proofs and allegations of said applicant and said respondent" and dismissed the petition, assuming to do so "without prejudice." The addition of those words was of no legal significance. The deputy had no greater authority than the commission, and the commission itself had no such power. *Harris* v. *Castile Mining Co.,* 222 Mich. 709.

Plaintiff later filed a second petition for further compensation without appealing from the dismissal of the first which the commission entertained, ordering another arbitration which was held with a full hearing of all testimony either side desired to offer, and plaintiff's petition was again dismissed.

With that arbitral order also standing unappealed from, plaintiff thereafter filed this third petition for further compensation which the commission entertained and the whole matter was gone over again at an arbitration hearing with like results as before. Defendant timely pleaded at this hearing former adjudication, particularly in the second arbitration where the whole matter had been gone over with like testimony as that then offered. For review of that decision plaintiff appealed to the commission.

In *Fritz* v. *Rudy Furnace Co.,* 218 Mich. 324, it is said:

"But the board (now commission) on review had no power to vacate the arbitration proceedings, to order another arbitration, or to grant a rehearing on arbitration."

It is urged for plaintiff, in substance, that the physical condition of a person claiming compensation for disability resulting from personal injuries arising out of and in the course of his employment always remains open to review by the commission, in support of which *Estate of Beckwith* v. *Spooner,* 183 Mich. 323 (Ann. Cas. 1916E, 886), is cited. As pointed out in *Pocs* v. *Buick Motor Co.,* 207 Mich. 591, the language of that import was used in connection with

a provision of the compensation act (§ 14, pt. 3 [2 Comp. Laws 1915, § 5467]) authorizing a review of weekly payments on request of the employer, employee or interested insurance company, and providing that "on such review" the weekly payment "may be ended, diminished or increased, subject to the maximum and minimum amounts provided," etc.

It was plaintiff's contention and testimony in all three of his petitions and hearings upon them, that he was totally incapacitated by his injury from work at the employment in which he was engaged when the accident occurred. His first and second petitions allege "that he is totally incapacitated in the future as to his former employment," and the third that he is not only "totally incapacitated from doing the work he was formerly employed at as an expert miner, * * * but that he is totally disabled from doing work of any character that requires the use of said leg." The test of an injured employee's right to compensation is his inability by reason of the accident to work and earn wages in the employment at which he was engaged when injured. If he was totally incapacitated when he filed his first petition, his condition in that respect could not change for the worse. Upon that proposition the third petition was but a rehearing of his former petitions.

For the foregoing reasons the decision of the commission is reversed and its award vacated.

CLARK, C. J., and McDONALD, BIRD, SHARPE, MOORE, FELLOWS, and WIEST, JJ., concurred.