ADAIR *v* METROPOLITAN BUILDING CO

1. WORKMEN'S COMPENSATION—EMPLOYER'S PREMISES—DEFINITION.

An employee who leaves work and within a reasonable time is injured in reaching other premises maintained by his employer as an adjunct of the employment is on the employer's premises for purposes of the workmen's compensation act; zone, environments and hazards is what is meant by the use of the word "premises" in the act.

2. WORKMEN'S COMPENSATION — EMPLOYER'S PREMISES — PRIVATE DRIVEWAY—HAZARDS OF EMPLOYMENT.

A building superintendent was within the zone, environments and hazards of his employment and therefore on the employer's premises for purposes of the workmen's compensation act where the superintendent was injured when he fell on a driveway while walking to the employer-owned parking lot, and the employer had given the superintendent permission to use the lot, even though the employer did not own, occupy or maintain the driveway; that the employer's parking lot was accessible by an alternate route of equal distance across a public sidewalk area was immaterial.

3. WORKMEN'S COMPENSATION—COURSE OF EMPLOYMENT—RESIDENT EMPLOYEE—ON-CALL EMPLOYEE—PERSONAL ERRAND.

A building superintendent who was injured when he slipped and fell while going to take his laundry to a laundromat

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 58 Am Jur, Workmen's Compensation § 214 *et seq.*
[3] 58 Am Jur, Workmen's Compensation § 209 *et seq.*
[4] 58 Am Jur, Workmen's Compensation § 281 *et seq.*

was injured in the course of his employment and his injury arose out of his employment where the superintendent was a resident employee continuously on call 24 hours per day (MCLA 412.1).

4. WORKMEN'S COMPENSATION—UNSKILLED LABOR—BASIS OF COMPENSATION—ABILITY TO COMPETE.

A resident building superintendent is in the category of unskilled laborer, and as such must compete with the total field of unskilled labor when no work is available as building superintendent; therefore, when he is disabled from performing general unskilled labor, he is entitled to workmen's compensation benefits, even though probably able to perform the duties of building superintendent.

Appeal from Workmen's Compensation Appeal Board. Submitted Division 2 November 2, 1971, at Lansing. (Docket No. 10132.) Decided February 22, 1972.

Frederick M. Adair presented his claim for workmen's compensation against Metropolitan Building Company and General Accident Group. Benefits granted. Defendants appeal by leave granted. Affirmed.

*Rene J. Ortlieb,* for claimant.

*Neal, Keil, Fazenbaker & Anastor,* for defendants.

Before: DANHOF, P. J., and BRONSON and TARGONSKI,* JJ.

TARGONSKI, J. Plaintiff was employed by defendant[1] as a building superintendent of the Metropolitan

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] Defendant will be used throughout this opinion, even though there are two defendant-appellants, the employer and its insurance carrier.

Building, an office building in the City of Flint. Plaintiff, his wife, and son lived in the building in a five-room apartment which defendant provided.

Plaintiff was required to be on call, more or less, 24 hours per day for security purposes. His duties were to supervise and direct the independent maintenance firm which was employed by defendant to clean the building. Plaintiff was also required to see that the doors of the building were locked at night and unlocked in the morning. He was required to inspect the work after the independent cleaning contractors left the building. He was hired to be there in case of an emergency and to take whatever steps would be necessary in an emergency to protect loss to the building.

A residential manager was employed by defendant who took care of leases, book work, and hiring for the building. The heating system and elevators in the building were automatic and were maintained under a contract with an outside firm. Major electrical and plumbing work was done under contract with outside tradesmen. Plaintiff was not required to do any physical work in the building. Physical work was either done by other employees of defendant or was contracted out. In the evening plaintiff was pretty much free to do as he pleased as long as the various systems of the building were running properly.

During the daytime of December 30, 1968, plaintiff left defendant's building to take his laundry to a laundromat because there were no laundry facilities within defendant's building. Plaintiff left the building by a main entrance and walked along a public sidewalk to a driveway adjoining the building on the south side. The driveway was owned by Consumers Power Company. While walking along the drive-

way to a parking area maintained by defendant, where plaintiff had parked his car, plaintiff slipped and fell on the icy surface and fractured his left hip. The place where plaintiff fell was not on the property owned, occupied, or maintained by the owner of the Metropolitan Building. There was an alternate route to the parking lot, of equal distance, which traversed a public sidewalk and a parking area which was maintained free of ice and snow by defendant. Testimony of plaintiff and his wife showed that they usually left the building and went to their car in the parking lot along the private drive owned by Consumers Power Company.

Prior to the date of hearing, plaintiff had recovered from his injuries sufficiently to be capable of doing the work he had been doing prior to the accident, although his injuries still hindered his capacity to perform in other areas of employment. He had applied for similar jobs after being discharged by defendant. He said that he was capable at the time of managing an apartment building and actively sought apartment managing or supervision as employment. He was unable to obtain such employment.

On November 14, 1969, a hearing was held. Three days later, the hearing referee issued a decision and order which found that plaintiff did receive a personal injury which arose out of his employment and was totally disabled at the time of the hearing. On August 10, 1970, the Workmen's Compensation Appeal Board affirmed the referee. Leave to appeal was granted.

On appeal defendant raises two issues. Defendant contends that plaintiff's accident and injury did not arise out of and in the course of his employment. Further, defendant contends that plaintiff was not

entitled to compensation benefits after the date of the hearing.

In examining the first issue raised, of whether the injury arose out of and in the course of employment, we must ascertain whether the injury falls within the scope of MCLA 412.1; MSA 17.151.[2] To answer this, two problems must be decided; (1) whether plaintiff was on the "premises" when the injury occurred, and (2) whether the personal errand could be considered "arising out of and in the course of his employment"?

The problem of whether plaintiff was on the "premises" when the injury occurred can be resolved in view of *Jean* v *Chrysler Corporation,* 2 Mich App 564 (1966), and *Fischer* v *Lincoln Tool & Die Co,* 37 Mich 198 (1971). In *Jean,* p 568, an injury upon a public roadway lying between the employer-owned parking lot and his place of business was held to be compensable. Our Court stated:

" * * * that the employee who leaves work and within a reasonable time is injured in reaching other premises maintained by his employer as an adjunct of the employment is covered by the act."

In *Fischer,* the plaintiff was injured on a public sidewalk while walking toward his employer's place of business from his car which he had parked on the street. This Court held that an employee injured upon a public sidewalk while on his way to work and while within a close proximity to the place where he works suffers an injury which is compensable as arising out of and in the course of his employment. In discussing what construction should be given the word "premises" as contained in MCLA 412.1; MSA 17.151, this Court said:

---

[2] This statute has been repealed and has been replaced by MCLA 418.301; MSA 17.237(301).

" 'Premises' does not equal 'property', and land owned by an employer may or may not be part of the premises, just as land owned by another than the employer might still be considered part of his premises."

After discussing *Lasiewicki v Tusco Products Co*, 372 Mich 125 (1963), and *Jean v Chrysler Corp, supra,* this Court announced in *Fischer, supra,* p 203:

"From an analysis of present case law we conclude that 'zone, environments and hazards' is substantially what is meant by the word 'premises' as contained in the workmen's compensation act.

"From the above, we can conclude that an employee is protected by the act when he is within said, 'zone, environments, and hazards', while arriving at, departing from, or during the time of his employment by traveling his usual, customary and direct route."

Here, defendant provided the parking lot and gave plaintiff permission to use the lot, with plaintiff having to cross another's property or walk on a public sidewalk to reach the lot. We are not concerned with whether the property, which was crossed, was privately or publicly controlled or whether more than one route was available; but in light of *Jean v Chrysler Corp, supra,* and *Fischer v Lincoln Tool & Die Co, supra,* we conclude that plaintiff was within the "zone, environments and hazards" of his labor so as to be considered on the premises of his employer in regard to MCLA 412.1; MSA 17.151.

Having established that plaintiff was within the "zone, environments and hazards" of his labor or, in other words, having sufficiently satisfied the premises requirement in MCLA 412.1; MSA 17.151, we

must determine whether the errand can be considered to have arisen out of and in the course of employment. Both parties have conceded in their respective briefs that plaintiff was a resident employee continuously on call 24 hours per day. The appeal board also came to a similar determination, saying:

"Even without the presumption afforded by the 1954 amendment this case would be compensable because the proofs presented herein show that plaintiff was employed under a special type of contract of hire where the activities and duties imposed upon him by his employer clearly placed him at the point of peril at the time the injury occurred. The course of employment is not synonymous with scope of employment, but includes an employee's administration to his own human needs, (*Crilly* v *Ballou,* 353 Mich 303 [1958]). Plaintiff's trip to the laundromat under the circumstances disclosed by the proofs before us was a unique way of life in his working environment which was imposed upon him by the particular contract of hire existing between himself and his employer. We hold that the injury which plaintiff received did arise out of and in the course of the activities and duties imposed upon him by the contract of employment he held with the defendant herein."

With respect to resident employees continuously on call, the general rule is most aptly stated by Larson:

"When an employee is required to live on the premises, either by his contract of employment or by the nature of the employment, as is continuously on call (whether or not actually on duty), the entire period of his presence on the premises pursuant to this requirement is deemed included in the course of employment." 1 Larson, Workmen's Compensation Law, § 24.00, p 421. See also, *Favorite* v *Kalamazoo State Hospital,* 238 Mich 566 (1927).

Although this is the generally accepted rule of law, in the past some limitations were placed upon the on-call coverage on the theory that the activity was too distinctly personal to support an award. See *Meehan* v *Marion Manor Apartments*, 305 Mich 262 (1943). But the recent trend of Michigan law has been very liberal in expanding the coverage afforded an employee under the workmen's compensation laws. Generally, an employee who is on a personal errand is covered by statute. *Dyer* v *Sears, Roebuck & Co*, 350 Mich 92 (1957); *Lasiewicki* v *Tusco Products Co, supra*. Even though these recent cases which have upheld an award to an employee who is on a personal errand differ from the present case because they did not deal with resident employees on call, but dealt with the more common employer-employee relationship of the employee being on the premises only for the purpose of working a specified shift, we feel they are representative of the current judicial and legislative attitude toward all workmen's compensation laws in this state. Evidence of this can further be demonstrated by the prospective rule of law[3] announced in *Whetro* v *Awkerman*, 383 Mich 235, 242-243 (1970), in which the Court states:

"We hold that the law in Michigan today no longer requires the establishment of a proximately causal connection between the employment and the injury to entitle a claimant to compensation. * * * They [cases] have brought the law in Michigan to the point where it can be said today that if the employment is the occasion of the injury, even though not the proximate cause, compensation should be paid."

---

[3] Applies only to *Whetro* v *Awkerman*, 383 Mich 235 (1970), and all claims for compensation arising after March 12, 1970.

Applying the preceding rationale, we find that plaintiff falls within the general rule regarding a resident employee continuously on call. This being so, plaintiff's injury, even though in pursuance of a personal errand, arose out of and in the course of his employment and is therefore within the scope of MCLA 412.1; MSA 17.151 and compensable.

As to the second issue raised, defendant alleges that because plaintiff was not disabled at the date of the hearing from performing the duties of his employment that existed at the time of his injury, the appeal board erred in allowing compensation beyond that date. Defendant's contention arises under MCLA 412.11; MSA 17.161,[4] which says that an injury is not compensable unless it impairs the employee's "earning capacity in the employment in which he was working at the time of the injury".

In the proceedings below the appeal board found that although plaintiff was probably capable of performing the duties of a building superintendent again, based upon the determination that plaintiff's employment was in the field of unskilled labor and on account of his injury, plaintiff still was not physically capable of competing with able-bodied men in the total field of unskilled labor and, therefore, affirmed the award of compensation. Specifically, the appeal board found:

"The proofs show, the referee found, and this finding is here uncontested, that at the time of plaintiff's injury he was employed in the field of unskilled labor. This is a field of labor normally referred to as common labor requiring no particular skill to perform and the field encompasses the whole spectrum of unskilled work. A common laborer's right to receive compensation is not solely contingent upon his

---

[4] This statute has been repealed and has been replaced by MCLA 418.371; MSA 17.237(371).

inability to perform a specific unskilled job to which he may have been assigned at the time of his injury but it is dependent upon his inability to compete with others in the general field of labor where his injury occurred. Plaintiff admits that he probably could perform work where he would only be required to supervise others, but he has been unable to find such work elsewhere and defendant refuses to hire him.

\* \* \*

"It is undenied that plaintiff's proofs do show that plaintiff suffered serious injury which caused a state of disablement for a considerable period of time. Under these circumstances it is incumbent upon the defendant to either present medical evidence from which we can conclude that plaintiff has recovered sufficiently to compete with able-bodied persons within the total field where injury occurred, or show that work within plaintiff's capacity to perform is available to him before an order can enter stopping or reducing compensation."

Upon review of an appeal board determination, this Court has the obligation to accept the board's finding of facts if there is any evidence whatever to support the findings. *Williams* v *Chrysler Corp*, 29 Mich App 398 (1971). In examining the evidence presented before the appeal board, we find that there was a sufficiency of evidence to substantiate the board's findings. Although there was no testimony as to whether plaintiff's job was skilled or unskilled, the board can draw inferences from other facts established so that it could have made the finding (which was uncontested) that plaintiff was engaged in common labor based upon the type of activity involved, which was supervising the maintenance men and performing acts of security in the building. *Meyers* v *Michigan Central Railroad Co*, 199 Mich 134 (1917).

We further conclude that the appeal board was correct in its interpretation of MCLA 412.11; MSA 17.161 to this situation. In applying that rule it has long been held that there are two classifications of employment—skilled and common labor (unskilled), with skilled labor divided into many separate skills. *Kaarto* v *Calumet & Hecla, Inc,* 367 Mich 128 (1962); *Hutsko* v *Chrysler Corp,* 381 Mich 99 (1968). Whether or not compensation is awarded often depends upon the classification of employment that is found to exist at the time of the injury. See, *Kaarto* v *Calumet & Hecla, Inc, supra.* In *Kaarto* the Court said, at 132:

"Had plaintiff been engaged in common labor at the time of injury, he would be entitled to compensation benefits because his injuries prevent him from doing some common labor. *Miller* v *S Fair & Sons,* 206 Mich 360 [1919]; *Smith* v *I Stephenson Co,* 212 Mich 154 [1920]; and *Wieland* v *Dow Chemical Co,* 334 Mich 427 [1952]."

Consequently, we hold that the appeal board, having determined that plaintiff was employed in the field of common or unskilled labor at the time of his injury, properly ruled that plaintiff continued to be disabled because of a loss of earning power in the whole field of unskilled labor.

Affirmed. Costs to appellee.

All concurred.