MICHALES v MORTON SALT COMPANY

Docket No. 98648. Argued May 3, 1995 (Calendar No. 6). Decided
    August 28, 1995.

Joseph F. Michales, while employed by the Morton Salt Company,
    sought worker's compensation, alleging a work-aggravated
    manic-depressive disorder and a high-frequency, work-related
    hearing loss. A magistrate denied both claims, ruling that the
    proofs failed to support a finding of an employment-related
    disability. The Worker's Compensation Appellate Commission,
    reversed, concluding that, as a matter of law, the hearing loss
    was a compensable injury as an impairment of wage-earning
    capacity. The Court of Appeals, MacKenzie, P.J., and Hood, J.
    (White, J., dissenting), reversed in an unpublished opinion per
    curiam, holding that there was not competent evidence to
    support the wcac conclusion, and noting that the plaintiff
    continued to perform his regular job after sustaining the hear-
    ing loss (Docket No. 133879). The plaintiff appeals.

In an opinion by Justice Riley, joined by Chief Justice
    Brickley, and Justices Boyle, Mallett, and Weaver, the
    Supreme Court held:

The plaintiff has not met his burden of establishing a limita-
    tion of wage-earning capacity in work suitable to his qualifica-
    tions and training and therefore is not compensably disabled
    within the definition of the worker's compensation act.

1. MCL 418.401; MSA 17.237(401) currently limits compensa-
    ble disability to employees experiencing a limitation of wage-
    earning capacity in work suitable to their qualifications and
    training resulting from a personal injury or work-related dis-
    ease. Although the plaintiff suffered a work-related hearing
    loss, the wcac incorrectly concluded that the injury was com-
    pensable under the act.

2. Favored work entails the modification of an employee's
    duties that in some manner accommodates the employee's
    injury. In this case, the defendant did not change the plaintiff's
    duties in any manner; the plaintiff continued to perform his job
    until he left because of manic depression. Moreover, there is no
    connection between the plaintiff's injury and the defendant's
    decision to install sound absorbent walls or to provide its
    employees with earplugs; rather, these modifications were an

effort to improve the work environment and did not transform regular employment into favored work.

3. It is not sufficient for a plaintiff simply to prove a work-related injury; inherent in the statutory definition of disability is the requirement of a limitation of wage-earning capacity. In this case, the plaintiff did not meet his burden of establishing that he sustained a limitation of wage-earning capacity in work suitable to his qualifications and training, and thus is not compensably disabled within the current definition of the statute.

Justice CAVANAGH, concurring, stated that the plaintiff completely failed to introduce any evidence of a limitation in his wage-earning capacity. Under MCL 418.401(1); MSA 17.237(401)(1), both an injury and a limitation in wage-earning capacity must be shown. A complete failure to introduce any evidence of a limitation in wage-earning capacity resulting from the injury simply precludes an award of benefits as a matter of law.

Affirmed.

Justice LEVIN, dissenting, stated that the judgment of the Court of Appeals should be reversed and the decision of the WCAC affirmed because there is record support for its findings and conclusions.

The WCAC adopted the portion of the magistrate's opinion setting forth unrebutted expert evidence that the plaintiff experienced a high-frequency hearing loss, amounting to a disability under the definition in effect before May 14, 1987, and that in effect on and after that date, which provides that the establishment of disability does not create a presumption of wage loss. It noted further that because the plaintiff, by virtue of his work-related condition, was excluded from working in a noisy environment, he was limited where he was not limited before the condition developed. Thus, he had a compensable disability, a loss in wage-earning capacity because of a work-related condition. It is beside the point that there is work, within restrictions imposed by his work-related hearing loss, that he can do without risk of increasing that loss. Although the plaintiff continued to do his regular job after he sustained a hearing loss, the hearing loss nevertheless was a limitation of his wage-earning capacity. The accommodations provided by the employer did not eliminate the limitation on his wage-earning capacity resulting from the hearing loss. The issues of disability and wage loss are separate questions.

*Bott & Spencer, P.C. (by Timothy J. Bott)*, for the plaintiff.

*Charters, Heck, O'Donnell, Petrulis & Zorza, P.C.* (by *Margaret A. O'Donnell*), for the defendant.

RILEY, J. In this case we must determine whether plaintiff's high-frequency, work-related hearing loss establishes a limitation of his "wage earning capacity in work suitable" to his "qualifications and training," where plaintiff continued to perform his preinjury job until he left because of a noncompensable, supervening illness. MCL 418.401(1); MSA 17.237(401)(1). We hold that plaintiff has not met his burden of establishing a limitation of wage-earning capacity in work suitable to his qualifications and training and is therefore not compensably disabled within the definition of the statute. We affirm the decision of the Court of Appeals.

I

Plaintiff began his employment with Morton Salt Company in March, 1968. He was initially employed in the chemical department and remained there until he was transferred to the powerhouse in 1974. During his thirteen years in the powerhouse, plaintiff advanced from a trainee to an assistant operator and finally to an operator. While an assistant operator in the powerhouse, plaintiff was responsible for running the boiler. As a powerhouse operator, plaintiff's responsibilities shifted to monitoring an electrical turbine to ensure the continuing operation of the powerhouse. In performing both jobs, however, he was responsible for periodically checking a series of gauges and reporting or repairing any potential problems.

While in the powerhouse, plaintiff was exposed to significant noise levels, first as an assistant

operator, where he was exposed to shrill noises from the boiler, and then later as an operator where his work station was located adjacent to the large, noisy turbine. As a result of the prolonged exposure to these noises, he began experiencing a ringing or humming in his ears. He was examined in February, 1988, by an otolaryngologist, Dr. Charles Henry, who later testified by deposition that plaintiff had sustained a hearing loss and related tinnitus as a result of noise exposure. Dr. Henry advised plaintiff not to work in a noisy environment unless adequately protected.

In 1987, *before* learning about plaintiff's hearing loss, defendant enclosed plaintiff's work station by installing insulated walls with acoustical ceiling tile in order to reduce the noise levels. Additionally, the company provided the operators with earplugs.

During much of his time with Morton Salt, plaintiff was also battling manic depression. He was originally diagnosed with the illness in 1972, and underwent treatment without significant absence from work. The disorder remained under control for many years until 1986 when plaintiff's symptoms elevated, causing him to miss considerable time from work. His prolonged bouts with depression often prohibited him from working until he ultimately quit on October 23, 1987.

However, on June 9, 1987, more than four months *before* his last day of work, plaintiff filed an application with the bureau of worker's disability compensation, alleging a work-aggravated manic-depressive disorder and a noise-induced, high-frequency hearing loss. Plaintiff was *not,* however, diagnosed or treated for hearing problems until he saw Dr. Henry, approximately 3½ months *after* his last day of work on October 23, 1987. Additionally, plaintiff continued working

without change as an operator with Morton Salt for four months, until he was unable to continue work because of his manic depressive illness.

After a hearing, the magistrate denied both claims and ruled that "[w]hile there is no question but that plaintiff is disabled, the proofs fail to support a finding of an employment-related disability within the meaning of the Act."[1] Specifically, with regard to plaintiff's hearing loss, the magistrate ruled that the proofs failed to establish that the modifications in the powerhouse did not accommodate plaintiff's acknowledged restrictions.[2]

Plaintiff appealed the decision to the Worker's Compensation Appellate Commission, arguing that notwithstanding the magistrate's determination that his manic depressive illness was nonwork-related, he was entitled to benefits for his hearing disability stemming from a noisy environment. He alleged that his potential for favored work, because of his partial disability, was terminated by a supervening, noncompensable total disability, i.e., his manic depressive disorder. The WCAC reversed and entered an open award, stating that the hearing loss constituted an impairment of wage-earn-

[1] Bureau of Worker's Disability Compensation, December 2, 1988, slip op at 6.

[2] The magistrate concluded:

It was the opinion of Dr. Henry that plaintiff has sustained a hearing loss and related tinnitus as the result of noise exposure. He advised that plaintiff avoid loud noise exposure as much as possible in the future. However plaintiff's own testimony established that there had been a dramatic reduction in noise exposure beginning in 1987 with the construction of a sound proof office and the mandatory wearing of ear plugs. Given these safeguards, the proofs fail to establish that plaintiff's continued employment in the power house was medically contraindicated. We have no way of determining that the present noise levels exceed the noise restrictions suggested by Dr. Henry. We therefore cannot find that plaintiff was disabled from performing his work activity because of a work related hearing loss. [*Id.*, slip op at 5-6.]

ing capacity and was therefore a compensable, partial disability.[3]

The Court of Appeals granted defendant's application for leave to appeal and reversed the decision of the WCAC. The majority held that there was not competent evidence to support the WCAC conclusion that plaintiff suffered a loss in wage-earning capacity.[4] The Court noted that plaintiff continued to perform his regular job after sustaining the hearing loss. Plaintiff appealed in this Court, and we granted leave.[5] Plaintiff no longer contests the finding that his manic-depressive illness is a noncompensable injury within the definition of the Worker's Disability Compensation Act.

II

Findings of fact by the magistrate are conclusive on review by the WCAC if they are supported by competent, material, and substantial evidence on the whole record. MCL 418.861a(3); MSA 17.237(861a)(3); *Holden v Ford Motor Co,* 439 Mich 257, 261; 484 NW2d 227 (1992). Moreover, review

---

[3] The WCAC held that plaintiff was excluded from working in a noisy environment by the work-related condition and was therefore limited, where he was not limited before. The WCAC reasoned that this established a compensable disability, a loss in wage-earning capacity, as a matter of law.

[4] Unpublished opinion, issued December 29, 1993 (Docket No. 133879). The Court stated:

> Even after he sustained the hearing loss, plaintiff continued to work in the same environment, and was able to perform his regular duties. Defendant installed a soundproof office and mandated the wearing of ear plugs for the protection of all employees. Dr. Henry stated that plaintiff should not work in a noisy environment without adequate protection. However, he stated that he gave such advice to anyone who worked in a noisy environment. No evidence showed that plaintiff's return to work was medically contraindicated. [Slip op at 2.]

[5] 447 Mich 996 (1994).

by the Court of Appeals or this Court is limited because "findings of fact made by the WCAC are conclusive if there is any competent evidence to support them." *Id.* at 263. Finally, this Court has the power to review questions of law of any final order of the WCAC. MCL 418.861a(14); MSA 17.237(861a)(14).

A

The applicable statute in this case is MCL 418.401; MSA 17.237(401), defining disabilities arising out of occupational diseases.[6] The current definition of a compensable disability is the result of a significant modification engendered by 1987 PA 28, § 401(1).[7] Even though the revised statute became effective May 14, 1987, it has not to date

---

[6] A personal injury under § 401 is defined as follows:

"Personal injury" shall include a disease or disability which is due to causes and conditions which are characteristic of and peculiar to the business of the employer and which arises out of and in the course of the employment. An ordinary disease of life to which the public is generally exposed outside of the employment is not compensable. [MCL 418.401(2)(b); MSA 17.237(401)(2)(b).]

We note that work-related hearing-loss cases, such as the present case, have previously been analyzed under MCL 418.401; MSA 17.237(401), as opposed to MCL 418.301; MSA 17.237(301), which relates to personal injuries arising out of and in the course of employment. See *Hargis v Letts Drop Forge,* 433 Mich 878; 446 NW2d 160 (1989).

[7] MCL 418.401(1); MSA 17.237(401)(1) previously defined disability as follows:

As used in this chapter, "disability" means a limitation of an employee's wage earning capacity in the employee's general field of employment resulting from a personal injury or work related disease. The establishment of disability does not create a presumption of wage loss.

The statute now defines disability as follows:

As used in this chapter, "disability" means a limitation of an

been applied by this Court.[8] Under the previous definition, an employee was disabled if there was personal injury or work-related disease that resulted in a "limitation of an employee's wage earning capacity in the employee's *general field of employment* . . . ." MCL 418.401(1); MSA 17.237(401)(1) (emphasis added). The current definition limits compensable disability to those employees experiencing a limitation of wage-earning capacity in work suitable to the employee's "qualifications and training" resulting from a personal injury or work-related disease.[9]

In accordance with the current definition of disability, plaintiff maintains that he has suffered a limitation of his wage-earning capacity in work suitable to his qualifications and training as a result of his work-related hearing loss. In support, plaintiff alleges that the measures taken by defendant to reduce the noise levels at plaintiff's work station in the powerhouse essentially rendered his job "favored work," which evidences a limitation

employee's wage earning capacity and work suitable to his or her qualifications and training resulting from a personal injury or work related disease. The establishment of disability does not create a presumption of wage loss. [MCL 418.401(1); MSA 17.237(401)(1).]

[8] However, the Court of Appeals has applied the current definition. See *Rea v Regency Olds/Mazda/Volvo,* 204 Mich App 516; 517 NW2d 251 (1994), lv gtd 447 Mich 996 (1994), and *Fraley v General Motors Corp,* 199 Mich App 280; 500 NW2d 767 (1993), which shed no light on the case before us. Although factually and procedurally similar, *Fraley* was decided under the previous definition of disability. The Court stated in pure dicta that under the current definition of disability, the plaintiff would also have suffered a limitation of wage-earning capacity in work suitable to his qualifications and training. Moreover, *Fraley* is distinguishable because the employer in *Fraley* did not rehire the plaintiff as a press operator, which was his occupation before his hearing loss. Instead, because of his hearing loss, the plaintiff was rehired as an assembler, which indicates that the work was favored. In the present case, plaintiff was not performing favored work at any time.

[9] In the present case, it is uncontested that the revised definition of disability applies.

of wage-earning capacity.[10] The magistrate determined that plaintiff had not sustained a limitation of his wage-earning capacity and was therefore not disabled.[11] However, the WCAC concluded that, as a matter of law, plaintiff's hearing loss was a compensable injury under either the present or previous statutory definitions of disability. We have reviewed the legal conclusion of the WCAC and hold that although plaintiff did suffer a work-related hearing loss, the WCAC incorrectly concluded that the injury was a compensable disability under the act.

Favored work entails the modification of an employee's duties that in some manner accommodates the employee's injury.[12] In the present case, defendant did not change plaintiff's duties in any

[10] The favored-work doctrine is a purely judicial creation. *Bower v Whitehall Leather Co,* 412 Mich 172, 182; 312 NW2d 640 (1981). The favored-work doctrine has been partially codified by MCL 418.401; MSA 17.237(401). In *Pulver v Dundee Cement Co,* 445 Mich 68, 75; 515 NW2d 728 (1994), this Court held that "[a]lthough the Legislature has made significant changes in the favored-work doctrine, this Court need not ignore all of its prior favored-work decisions in their entirety."

Wages from favored work may be used as a setoff against an employer's worker's compensation liability. MCL 418.361(1); MSA 17.237(361)(1). We note that the primary purpose of the doctrine is mitigation, while it simultaneously serves a rehabilitative function. *Bower, supra* at 182. Additionally, an employee will not receive an award if an offer of favored work is unjustifiably refused. MCL 418.319; MSA 17.237(319).

[11] See n 2.

[12] See *Jones v Auto Specialties Mfg Co,* 177 Mich App 59, 64; 441 NW2d 1 (1988), in which the Court held that " '[f]avored work' is used to describe work *offered by the employer* to a disabled employee which accommodates the employee's limitations." (Emphasis in original.) The Court in that case further held that an employee, who "bid down" to a position that required less strenuous work following a back injury, was not performing favored work. The Court reasoned that "there is absolutely no indication on the record that plaintiff's condition motivated defendant to place him in lighter work that constituted favored work in mitigation of disability compensation liability." *Id.* at 65.

See also *Hartsell v Richmond Lumber Co,* 154 Mich App 523; 398 NW2d 456 (1986). Additionally, in *Bower,* n 10 *supra* at 182, this Court described favored work as "less strenuous post-injury work."

manner.[13] In fact, it is uncontested that plaintiff continued to perform his exact job until he left Morton Salt because of manic depression.

Moreover, in the present case, there is no connection between plaintiff's injury and defendant's decision to install sound absorbent walls, nor is there any connection between plaintiff's injury and the company's policy of providing its employees with earplugs. These modifications were an effort to improve the work environment. Such modifications do not transform regular employment into favored work. We, therefore, reject expansion of the favored-work doctrine beyond recognition to include situations in which the employer merely improves the work environment.

The present case is distinguishable from *Powell v Casco Nelmor Corp,* 406 Mich 332; 279 NW2d 769 (1979), in which an employee injured her thumb at work and was unable to resume her job for a two-month period. She returned to work, but could no longer perform her job because of her injury. When the plaintiff finally returned, she was only able to perform work that the Worker's Compensation Appeal Board concluded was favored. The plaintiff continued the favored work until sometime after she was diagnosed with cancer of the larynx.

The *Powell* Court stated that "[t]here is no dispute that the performance of post-injury work at no wage loss precludes payment of disability benefits while that work continues." *Id.* at 347. The WCAB determined that the employee was performing "favored work," which limited her wage-earning capacity. *Id.* In reaching this result, the

---

[13] For example, in *Zimmerman v Cadillac Malleable Iron Co,* 445 Mich 234, 241, n 4; 518 NW2d 390 (1994), the employer accommodated the plaintiff's weight-lifting restriction by assigning him unskilled common labor.

Court stated that " 'disability' is defined as the 'inability to perform the work claimant was doing when injured.' " *Id.* at 350, citing 2 Larson, Workmen's Compensation, § 57.53, p 10-129.[14] Additionally, in concluding that the plaintiff had a limitation of wage-earning capacity, the Court relied on the WCAB finding that the plaintiff was capable of performing only favored work, which "conclusively established plaintiff's disability and right to compensation." *Id.* at 351-352.

In contrast to *Powell,* plaintiff was able and was in fact performing the same work postinjury as he was preinjury. We conclude that plaintiff was not engaged in favored work at the time he discontinued his employment with defendant and, therefore, established a wage-earning capacity before leaving Morton because of his nonwork-related manic depression.

### B

Having concluded that plaintiff was not engaged in favored work, the issue remains whether plaintiff's hearing loss is nevertheless compensable. In the present case, the magistrate determined that plaintiff failed to establish that working at noise levels existing in the powerhouse were medically inadvisable. The WCAC adopted the magistrate's operative findings of fact without establishing any independent findings of fact. Therefore, its holding was merely a different legal conclusion on the basis of the essential facts as determined by

---

[14] See *Siebert v Northport Point Cottage Owners' Ass'n,* 378 Mich 661, 674; 148 NW2d 790 (1967), citing *Levanen v Seneca Copper Corp,* 227 Mich 592, 601; 199 NW 652 (1924), which stated that " '[t]he test of an injured employee's right to compensation is his inability by reason of the accident to work and earn wages in the employment at which he was engaged when injured.' "

the magistrate.[15] Because this Court may review questions of law involved with any final order of the WCAC pursuant to MCL 418.861a(14); MSA 17.237(861a)(14), we conclude that the WCAC improperly held that plaintiff was disabled under the meaning of the act.[16]

It is not sufficient for plaintiff to simply prove a work-related injury, because inherent in the statutory definition of disability is the requirement of a limitation of wage-earning capacity. Therefore, we must determine whether plaintiff has met his burden of proving such a limitation of wage-earning capacity. In order to do so, we must examine the new statutory definition of disability. The statutory change was designed to narrow the scope of employees' eligibility for worker's compensation benefits and eliminate anomalous results as illustrated in the following example:[17]

---

[15] The WCAC held: "We agree with plaintiff that he is entitled to an open award for his work-related hearing loss, this as a matter of law." *Michales v Morton Salt Co,* 1990 WCACO 983, 985. See *Fraley,* n 8 *supra* at 282-283, in which the Court of Appeals recognized:

> [T]he WCAC did not reverse the magistrate's findings of fact, it reversed the magistrate's conclusion of law. In fact, the WCAC explicitly adopted the magistrate's finding of work-related hearing loss. It simply reversed the magistrate's legal conclusion that, pursuant to the established facts and under the applicable law, plaintiff was not disabled.

[16] The WCAC held that "Plaintiff's condition, however, amounts to disability under either the definition in effect before May 14, 1987, or that in effect on or after that date." 1990 WCACO 986. This holding is also improper for the reason that in this case, the operative definition of disability is the revised definition, and this case must be analyzed pursuant to that decision only. Additionally, as previously stated, the parties agree that the current definition of disability applies in this case.

[17] The language of the present statute was adopted by the Legislature pursuant to Professor St. Antoine's recommendation in a report to Governor Blanchard. Professor St. Antoine recommended that the Michigan definition of "disability" should more closely resemble "the mainstream of American law" by adopting a modified version of Larson's definition of disability.

A representative of a large employer frequently cited the example of an employee who lost the tip of his little finger. This individual had been an assembly line worker, and this loss did not in any way affect his ability to perform his old job or any

My conclusion is that the solution to the problem probably does not lie in further tinkering at this time with the new statutory definition of "disability." If I could write on a clean slate, I would prefer to see the Michigan definition brought even closer into the mainstream of American law by declaring that "disability" means a "limitation of an employee's wage earning capacity in work suitable to his or her qualifications and training resulting from a personal injury or work related disease." That would simply substitute Professor Larson's classic formulation of "work suitable to claimant's qualifications and training" for the "employee's general field of employment" as contained in Public Act 200 of 1981. [St. Antoine, Workers' Compensation in Michigan: Costs, Benefits, and Fairness, A report to Governor James J. Blanchard's Cabinet Council on Jobs and Economic Development, p 27 (1984).]

Additionally, Professor St. Antoine has stated:

"That the changes might serve to reassure those who believe that the state's definition of 'disability' is a major flaw in our compensation system." [1987 Journal of the House 1068.]

In Welch, Worker's Compensation in Michigan: Law & Practice (rev ed), § 8.10, p 8-11 and § 8.11, p 8-14, the changes have been described as follows:

The 1987 amendments changed the universe of jobs to which a worker's job is compared. Under the old law this was his or her "field of employment." Under the new definition it is "work suitable to his or her qualifications and training." For an unskilled worker "field of employment" meant all unskilled jobs. Now, however, *the worker must show a limitation in the more narrow area* of "work suitable to his or her qualifications and training." [Emphasis added.]

\* \* \*

The new definition also makes a substantive improvement in Michigan's law by closing a serious loophole. As indicated above, under the old law an unskilled worker was considered disabled if he or she had any limitation on his or her wage-earning capacity in the entire field of unskilled employment. *Adair v Metropolitan Building Co,* 38 Mich App 393; 196 NW2d 335 (1972). Now a worker must show a limitation on the capacity to perform work suitable to his or her qualifications and training.

job similar to it, but he was limited in his ability to be a typist, which is within the general field of common labor. Accordingly, under the old law, he had a limitation on his ability to perform work within his field of employment, and he was thus disabled. Under the new law, we will look only at work suitable to this man's qualifications and training. Since this man was trained and experienced as an assembly line worker, it is most likely that the loss of the tip of one finger will not in any way interfere with his ability to perform work suitable to his qualifications and training. Accordingly, he will not be disabled. [Welch, Worker's Compensation in Michigan (rev ed), § 8.11, pp 8-14 to 8-15.]

In the present case, plaintiff's job was to monitor and check gauges. In doing so, he ensured the proper operation of equipment such as the boiler and the turbine. It is uncontested that he remains able to perform these duties, i.e., work suitable to his qualifications and training. Plaintiff's ear specialist advised that plaintiff should avoid loud noise exposure to the extent possible. However, we agree with the magistrate that there is no evidence that performance of these duties was medically inadvisable or contraindicated. He is able to perform these duties whether in defendant's plant or any similar plant, with the protection of earplugs.[18] It is insufficient, as illustrated in the previ-

---

[18] Cf. *Hargis,* n 6 *supra,* which was decided under the previous definition of disability. In *Hargis,* this Court remanded a similar case to the Court of Appeals with instructions to remand to the WCAB to address whether the plaintiff's work-related hearing loss was a compensable occupational disease pursuant to MCL 418.401 *et seq.*; MSA 17.237(401) *et seq.* On remand to the WCAB, it was held under the previous definition of disability:

Plaintiff suffered no wage loss or impairment of earning capacity due to his hearing loss. Plaintiff's claimed disability, as revealed by his testimony, relates to his back rather than to his hearing. Plaintiff's testimony reveals that it was a conflict

ous example, that plaintiff may not be able to perform some work in the general field of common labor because of his hearing loss.[19] Plaintiff continued to perform his regular jobs under the same conditions as all other employees. As such, plaintiff has not met the burden of proving a limitation of wage-earning capacity.[20]

The WCAC based its decision that plaintiff was disabled on the fact that he could no longer work in a noisy environment. This conclusion is improper for two reasons. First, as a factual matter, the magistrate found that plaintiff *is* able to work in a noisy environment with proper protection, which Dr. Henry indicated was a requirement for any person working in such an environment. Second, even assuming the inability to work in a noisy environment, a person is not compensably disabled within the meaning of the current definition if the employee remains able to perform work suitable to the employee's qualifications and training without limitation of wage-earning capac-

with Remer, rather than work-related difficulty with hearing, that gave rise to hearing claims. Dr. Waggoner, whose credentials are superior, believes the plaintiff to be able to work in any environment with proper protection and believes the plaintiff's hearing loss has stabilized and will not grow worse. Both doctors would not recommend work in a noisy environment to anyone, but do not opine that it presents any special hazard, contraindication, or inadvisability to the plaintiff. We again affirm the decision of the [hearing referee]. [*Hargis v Letts Drop Forge,* 1989 WCABO 1677, 1686.]

[19] The relevant inquiry is not whether there is a theoretical job in the employee's general field of employment that the employee is no longer able to perform. Instead, the question is whether the employee's wage-earning capacity, i.e., ability to earn wages, has been limited, considering the employee's qualifications and training.

[20] While a claimant's return to his preinjury job is strong evidence of an undiminished wage-earning capacity, such evidence is not necessarily dispositive. See 1C Larson, Workmen's Compensation, § 57.22(c), pp 10-188 to 10-192. The present plaintiff, however, has failed to rebut the presumption of a postinjury wage-earning capacity equal to his preinjury capacity, and offers no other evidence of wage-earning capacity impairment.

ity. On the basis of the facts as found by the
magistrate and adopted by the WCAC, as a matter
of law, plaintiff has not sustained a disability
because he has not met his burden of establishing
that his wage-earning capacity has been limited by
his hearing loss.

Therefore, we note that the present case is
distinguishable from the line of cases. holding that
a supervening, noncompensable injury does not
suspend or bar compensation for an unrelated,
preexisting partial disability.[21] For example, in
*Zimmerman v Cadillac Malleable Iron Co,* 445
Mich 234; 518 NW2d 390 (1994), the plaintiff was
determined to be partially dependent when he
became totally disabled as a result of a nonwork-
related heart condition. The parties in *Zimmer-
man* agreed that the plaintiff was performing fa-
vored work. *Id.* at 241. In contrast, plaintiff was
not partially disabled because he had no limitation
of wage-earning capacity when his noncompensa-
ble manic depression rendered him totally dis-
abled. Therefore, cases such as *Sotomayor v Ford
Motor Co,* 300 Mich 107; 1 NW2d 472 (1942), and

---

[21] See *Sotomayor v Ford Motor Co,* 300 Mich 107, 119; 1 NW2d 472
(1942), in which an equally divided Court held that an employee
performing favored work who is subsequently totally disabled did not
relieve the employer's liability:

The fact that plaintiff is confined in the leper colony by
health authorities and is thereby prevented from working at
"favored employment" does not defeat his right to compensa-
tion for his continuing hand injury. The liability to pay com-
pensation for partial disability has been determined by the
department of labor and industry and the supervening leprosy
and resulting confinement does not relieve defendant from such
adjudicated liability.

See also *Powell, supra,* in which this Court held that the inability
of a partially disabled employee to continue performing favored work,
accommodating the partial disability, does not preclude payment of
benefits if a subsequent, supervening, nonwork-related injury outside
the control of the employee renders the employee unable to work.

*Zimmerman,* have no application to the present case.

III

In the present case, neither the magistrate, the WCAC, nor the Court of Appeals held that plaintiff's work was favored or restricted. Defendant's efforts to reduce noise levels at its plant merely improved the work environment and were *not* done to accommodate plaintiff's hearing loss. The changes to the powerhouse do not transform plaintiff's job into favored work. Moreover, under *Powell, supra* at 348, plaintiff had "accepted regular employment with ordinary conditions of permanency," which further indicates that plaintiff was not engaged in favored work.

Plaintiff has not met his burden of establishing that he sustained a limitation of his wage-earning capacity in work suitable to his qualifications and training. The current definition of disability narrows the scope of an employee's eligibility for worker's compensation benefits. Pursuant to this definition of disability, plaintiff remains able to perform work suitable to his qualifications and training. Indeed, he continued to perform the exact job that he performed before his hearing loss. In light of this, plaintiff has no proven limitation of wage-earning capacity. We therefore hold that plaintiff is not compensably disabled within the current definition of the statute. The decision of the Court of Appeals is affirmed.

BRICKLEY, C.J., and BOYLE, MALLETT, and WEAVER, JJ., concurred with RILEY, J.

CAVANAGH, J. I concur in the result reached by the majority. The plaintiff failed to establish

a prima facie case. Although he established a personal injury, he completely failed to introduce any evidence of a limitation in his wage-earning capacity. As required by MCL 418.401(1); MSA 17.237(401)(1), both an injury and a limitation in wage-earning capacity must be shown. A complete failure to introduce any evidence of a limitation in wage-earning capacity resulting from the injury simply precludes an award of benefits as a matter of law.

LEVIN, J. (*dissenting*). The Worker's Compensation Appellate Commission found that Joseph F. Michales was disabled pursuant to § 401(1)[1] of the Worker's Disability Compensation Act, and was entitled to weekly wage-loss benefits. The Court of Appeals reversed.[2] I would reverse, and affirm the decision of the WCAC because there is record support for its findings and conclusions.

The WCAC adopted the portion of the magistrate's opinion setting forth unrebutted expert evidence that Michales "experienced a high frequency hearing loss."[3] The WCAC said, and I agree, that Michales' condition amounted to a disability under either the definition in effect before May 14, 1987, or that in effect on and after that date.[4]

The WCAC noted that both the definitions before and after May 14, 1987, provide that " '[t]he establishment of disability does not create a presumption of wage loss,' " and said that "indeed plaintiff

---

[1] MCL 418.401(1); MSA 17.237(401)(1).

[2] Unpublished opinion per curiam, issued December 29, 1993 (Docket No. 133879).

[3] 1990 WCACO 983, 985.

[4] MCL 418.401(1); MSA 17.237(401)(1) before and after its amendment by 1987 PA 28, effective May 14, 1987.

had none until October 24, 1987," the day after his last day of work.[5]

The WCAC further said, and I agree with its analysis:

> Because plaintiff, by virtue of his work-related condition, is excluded from working in a noisy environment, he is limited where he was not limited before the condition developed. Thus he has a compensable disability, a loss in wage-earning capacity because of a work-related condition.
>
> * * *
>
> Nor does it matter that nobody should be exposed to the noise that resulted in plaintiff's hearing loss. With the loss established, and restrictions imposed to prevent further loss, plaintiff is not in the same position as the individual not yet so impaired.
>
> * * *
>
> The record establishes that working around loud noises is what plaintiff did during his long tenure at defendant. It was, therefore, work suitable to his qualifications and training. It is no longer suitable. He thus has a limitation in his wage-earning capacity under either definition of disability. [Citations omitted.]
>
> It is beside the point that there is work, within restrictions imposed by his work-related hearing loss, that plaintiff can do without risk of increasing that loss. The Magistrate declined to find that the work plaintiff was doing when he left defendant was not in that category: "We have no way of determining that the present noise levels exceed the noise restrictions suggested by Dr. Henry." For that reason, as explained earlier, and as a matter of law, a date of injury at some time before plaintiff's last day worked, but still in 1987, must be assigned, and we proceed on the assumption that the work he did when he left defendant was

---

[5] *Id.* at 986.

doing him no harm: it accommodated his disability.

While plaintiff could do that work, defendant was entitled to credit for wages earned at it pursuant to the provisions of MCL 418.361 [MSA 17.237(361)]. However, so long as the work-related hearing loss remains, entitlement to weekly benefits remains when plaintiff can no longer do that work. [*Powell v Casco Nelmor Corp,* 406 Mich 332; 279 NW2d 769 (1979).]

Nor can plaintiff be considered to have voluntarily removed himself from the work force for having left without good and reasonable cause, the employment defendant was providing him. MCL 418.401(3)(a) [MSA 17.237(401)(3)(a)].[6]

Although Michales continued to do his regular job, in the words of the Court of Appeals, after "he sustained a hearing loss," the hearing loss nevertheless was a "limitation" of his wage-earning capacity.[7] The accommodations provided by the employer, Morton Salt, did not eliminate the limitation on Michales' wage-earning capacity resulting from the hearing loss. The issues of "disability" and "wage loss" are separate questions.[8]

I would, again, for the reasons stated by the

---

[6] *Id.* at 986-988. MCL 418.401(3)(a); MSA 17.237(401)(3)(a) provides:

If disability is established pursuant to subsection (1), entitlement to weekly wage loss benefits shall be determined pursuant to this section and as follows:

(a) If an employee receives a bona fide offer of reasonable employment from the previous employer, another employer, or through the Michigan employment security commission and the employee refuses that employment without good and reasonable cause, the employee shall be considered to have voluntarily removed himself or herself from the work force and is no longer entitled to any wage loss benefits under this act during the period of such refusal.

[7] Note 2 *supra,* slip op at 2.

[8] There is no need to consider the favored-work doctrine in the instant case.

WCAC, reverse the decision of the Court of Appeals and reinstate the order entered by the WCAC.