Weaver, J.
(concurring). The dissents and the majority have chosen to engage in responses to each other that contain some inappropriate and unnecessary assertions. For this reason, and to emphasize this Court’s treatment of the worker’s compensation act’s definition of disability since the Legislature amended the definition to its current form in 1987, I write separately.
*173 I concur with the result and the reasoning of parts one through five of the majority opinion. The majority decision is consistent with my partial concurrence and partial dissent in Haske v Transport Leasing, Inc, 455 Mich 628; 566 NW2d 896 (1997),[1] and follows consistently from this Court’s interpretations of the definition of disability under the WDCA that preceded Haske. See, e.g., Rea v Regency Olds/Mazda/Volvo, 450 Mich 1201; 536 NW2d 542 (1995), and Michales v Morton Salt Co, 450 Mich 479; 538 NW2d 11 (1995).[2]
MCL 418.301(4) as amended in 1987 states:
As used in this chapter, “disability” means a limitation of an employee’s wage earning capacity in work suitable to his or her qualifications' and training resulting from a personal injury or work related disease. The establishment of disability does not create a presumption of wage loss.
Addressing this language for the first time at this level, the Rea Court stated as follows:
A majority of the Court is of the opinion that the 1987 definition of disability in the Worker’s Disability Compensation Act requires a claimant to demonstrate how a physical limitation affects wage-earning capacity in work suitable to the claimant’s qualifications and training. It is not enough for the claimant claiming partial disability to show an inability to return to the same or similar work. If the claimant’s physical limitation does not affect the ability to earn wages in work in which the claimant is qualified and trained, the claimant is not disabled. [Id. at 1201.]
*174 Addressing the same language as it appears at MCL 418.401(1),[3] the Michales decision noted the language’s focus is on wage-earning capacity:
The relevant inquiry is not whether there is a theoretical job in the employee’s general field of employment that the employee is no longer able to perform. Instead, the question is whether the employee’s wage-earning capacity, i.e., ability to earn wages, has been limited, considering the employee’s qualifications and training. [Id. at 493, n 19.][4]
The majority decision in Haske abruptly broke from these prior interpretations of the wdca definitions of disability. It held that “an employee is disabled if there is at least a single job within his qualifications and training that he can no longer perform.” Haske, p 662.
The problem with the Haske majority’s holding is that, as I noted in my opinion, it returned disability analysis to its pre-1981 and 1987 state rendering the Legislature’s amendments in those years meaningless. See, e.g., Powell v Casco Nelmor Corp, 406 Mich 332, 350; 279 NW2d 769 (1979) (holding that disability is the inability to perform work the claimant was doing when injured), and Pigue v Gen Motors Corp, 317 Mich 311, 315; 26 NW2d 900 (1947) (finding total disability where an employee was unable to do the same work after the injury).

 The Haske decision was decided by a four to two to one split.

 I joined the dissent in Rea because I agreed with Justice Riley that the Rea majority unnecessarily remanded in that case for further factfinding. I joined the majority in Michales.

 Subsection 401(1) is part of Chapter 4 of the worker’s compensation act addressing occupational diseases.

4 In his Michales concurrence, Justice Cavanagh summarized the statute’s focus on wage-earning capacity:
[B]oth an injury and a limitation in wage-earning capacity must be shown. A complete failure to introduce any evidence of a limitation in wage-earning capacity resulting from the injury simply precludes an award of benefits as a matter of law. [Id. at 496.]